## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| BENJAMIN RAMEY,<br>4251 Clay St., N.E.<br>Washington, D.C. 20019, | ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Case No. _____ |
| POTOMAC ELECTRIC POWER<br>COMPANY,<br>701 9th Street, N.W.<br>Washington, D.C. 20068, | ) ) ) ) ) | |
| Defendant. | ) ) | |

### NOTICE OF REMOVAL

Pursuant to 28 U.S.C. §§ 1441 and 1446, Defendant Potomac Electric Power Company

("Pepco") hereby removes to this Court a civil lawsuit filed in the Superior Court of the District

of Columbia, Civil Division, Case No. 0008000-07. In support of its Notice of Removal, Pepco

states:

1.      On or about December 10, 2007, Plaintiff filed a Complaint in the Superior Court

of the District of Columbia, Civil Division, Case No. 0008000-07 (the "Superior Court Action"),

asserting a claim that Pepco violated "Federal Department of Transportation DOT Drugs and

Alcohol Law." Pepco was served with a copy of the Complaint on December 10, 2007. No

further pleadings have been filed in this action. A copy of the Complaint and Summons is

attached hereto as Exhibit A.

2.      This action is removable because Plaintiff's claim for alleged violations of the

Commercial Motor Vehicle Safety Act and Department of Transportation ("DOT") regulations

falls within the original federal question jurisdiction of this Court under 28 U.S.C. § 1331 and 28

U.S.C. § 1441. Additionally, to the extent that Plaintiff intended to assert some type of state tort

claim challenging his alcohol testing, any such claim would be founded upon, and necessarily would require the Court to interpret, the collective bargaining agreement ("CBA") between Pepco and Plaintiff's Union. Any purported state law claim is therefore preempted by section 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185, and properly removed to this Court. See Avco Corp. v. Aero Lodge No. 735, 390 U.S. 557, 561 (1968); Sokos v. Hilton Hotels Corp., 283 F. Supp. 2d 42, 47-50 (D.D.C. 2003) (wrongful discharge and tortious interference with contract claim preempted by section 301 because resolution required interpretation of CBA). Each of these independent grounds warrants removal of Plaintiff's action.

3.      Plaintiff's current Complaint against Pepco[1] alleges that Pepco violated DOT regulations when it administered reasonable suspicion blood-alcohol testing to him in 2003. Plaintiff alleges that Pepco is bound by DOT regulations when it tests its drivers for drugs or alcohol. Comp. ¶¶ 2-4. Plaintiff also alleges that Pepco violated these DOT-mandated procedures when it conducted a blood-alcohol test pursuant to its company policies. Comp. ¶¶ 2-10. Plaintiff's claim therefore alleges violations of the Commercial Motor Vehicle Safety Act and federal regulations issued by the Secretary of Transportation, 49 C.F.R. §§ 40, 382, 386. As such, Plaintiff's current action arises under federal law and is removable.

4.      Additionally, although it is difficult to construe Plaintiff's *pro se* Complaint, to the extent that he asserts a state tort claim, this claim is preempted by section 301 of the LMRA and is consequently also removable. It is well-settled that section 301 "provides federal-court jurisdiction over controversies involving collective-bargaining agreements." Sokos, 283 F. Supp. 2d at 46 (citing Lingle v. Norge Div. of Magic Chef, Inc., 483 U.S. 399, 403 (1988)); see

---

[1] This is the ninth proceeding that Plaintiff has filed concerning his alcohol testing, suspension, and/or termination.

also Franchise Tax Bd. v. Construction Laborers Vacation Trust, 463 U.S. 1 (1983) (the

"preemptive force of section 301 is so powerful as to displace entirely any state cause of action

for violations of [a collective bargaining agreement].")  If a state law claim depends upon the

meaning or requires the interpretation of a CBA, the claim is preempted.  Sokos, 283 F. Supp. 2d

at 46; Grandison v. Wackenhut Services, Inc., 2007 WL 2781892, *3 (D.D.C. 2007).  As

demonstrated in detail in Pepco's notice of removal and motion to dismiss, pending before this

court in Ramey v. Potomac Electric Power Co., No. 07-2132 (RJL), even if Plaintiff intends to

assert a tort claim in his Complaint, such a claim would be subject to section 301 preemption and

removable.  Sokos, 283 F. Supp. 2d at 47 (plaintiff's wrongful discharge claim preempted by

section 301 and removed to federal court because it necessarily required the court to examine the

meaning of his CBA); see also Clark v. Newport News Shipbuilding & Dry Dock Co., 937 F.2d

934, 938 (4th Cir. 1991) (state tort claims removed to federal court on basis of section 301

preemption because the "rights of [employee and employer] with respect to drug testing can be

resolved only by reference to the [CBA] and its express and implied provisions"); Pepco's Notice

of Removal, Case No. 07-2132 (RJL), attached hereto as Exhibit B.

     5.     Pepco will provide written notice of filing of this Notice of Removal to the Clerk

of the Superior Court of the District of Columbia.

     WHEREFORE, Pepco hereby removes the pending state court action to the United States

District Court for the District of Columbia pursuant to 28 U.S.C. §§ 1441 and 1446.

Respectfully submitted,

Connie N. Bertram (Bar No. 435840)
Winston & Strawn LLP
1700 K Street, N.W.
Washington, D.C. 20006
(202) 282-5000
(202) 282-5100 (fax)

Jill D. Flack (Bar No. 420020)
Associate General Counsel
Potomac Electric Power Company
701 9th Street, NW
Washington, D.C. 20068
(202) 872-2756
(202) 872-3281 (fax)

Counsel for Defendant

December 31, 2007

## CERTIFICATE OF SERVICE

The undersigned certifies that she caused a true and correct copy of the Notice of

Removal to be served by first class mail, postage prepaid on this 31st day of December, 2007, on

the following individual:

> Benjamin Ramey
> 4251 Clay Street, N.E.
> Washington, D.C.  20019

Connie N. Bertram

# Exhibit A



# SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
## CIVIL DIVISION

BENJAMIN RAMEY
Vs.
POTOMAC ELECTRIC POWER CO.

C.A. No.    2007 CA 008000 B

## INITIAL ORDER AND ADDENDUM

      Pursuant to D.C. Code § 11-906 and District of Columbia Superior Court Rule of Civil Procedure ("SCR Civ") 40-I, it is hereby **ORDERED** as follows:

    (1) Effective this date, this case has assigned to the individual calendar designated below. All future filings in this case shall bear the calendar number and the judge's name beneath the case number in the caption. On filing any motion or paper related thereto, one copy (for the judge) must be delivered to the Clerk along with the original.

    (2) Within 60 days of the filing of the complaint, plaintiff must file proof of serving on each defendant: copies of the Summons, the Complaint, and this Initial Order. As to any defendant for whom such proof of service has not been filed, the Complaint will be dismissed without prejudice for want of prosecution unless the time for serving the defendant has been extended as provided in SCR Civ 4(m).

    (3) Within 20 days of service as described above, except as otherwise noted in SCR Civ 12, each defendant must respond to the Complaint by filing an Answer or other responsive pleading. As to the defendant who has failed to respond, a default and judgment will be entered unless the time to respond has been extended as provided in SCR Civ 55(a).

    (4) At the time and place noted below, all counsel and unrepresented parties shall appear before the assigned judge at an Initial Scheduling and Settlement Conference to discuss the possibilities of settlement and to establish a schedule for the completion of all proceedings, including, normally, either mediation, case evaluation, or arbitration. Counsel shall discuss with their clients **prior** to the conference whether the clients are agreeable to binding or non-binding arbitration. **This order is the only notice that parties and counsel will receive concerning this Conference.**

    (5) Upon advice that the date noted below is inconvenient for any party or counsel, the Quality Review Branch (202) 879-1750 may continue the Conference **once**, with the consent of all parties, to either of the two succeeding Fridays. Request must be made not less than six business days before the scheduling conference date. No other continuance of the conference will be granted except upon motion for good cause shown.

                                   Chief Judge Rufus G. King, III

Case Assigned to:  Judge GERALD I FISHER
Date:  December 10, 2007
Initial Conference: 9:30 am, Friday, March 21, 2008
Location:  Courtroom 519
            500 Indiana Avenue N.W.
            WASHINGTON, DC  20001

## ADDENDUM TO INITIAL ORDER AFFECTING
## ALL MEDICAL MALPRACTICE CASES

In accordance with the Medical Malpractice Proceedings Act of 2006, D.C. Code § 16-2801, et seq. (2007 Winter Supp.), "[a]fter an action is filed in the court against a healthcare provider alleging medical malpractice, the court shall require the parties to enter into mediation, without discovery or, if all parties agree[,] with only limited discovery that will not interfere with the completion of mediation within 30 days of the Initial Scheduling and Settlement Conference ("ISSC"), prior to any further litigation in an effort to reach a settlement agreement. The early mediation schedule shall be included in the Scheduling Order following the ISSC. Unless all parties agree, the stay of discovery shall not be more than 30 days after the ISSC." D.C. Code § 16-2821.

To ensure compliance with this legislation, on or before the date of the ISSC, the Court will notify all attorneys and *pro se* parties of the date and time of the early mediation session and the name of the assigned mediator. Information about the early mediation date also is available over the internet at https://www.dccourts.gov/pa/. To facilitate this process, all counsel and *pro se* parties in every medical malpractice case are required to confer, jointly complete and sign an EARLY MEDIATION FORM, which must be filed no later than ten (10) calendar days prior to the ISSC. Two separate Early Mediation Forms are available. Both forms may be obtained at www.dccourts.gov/medmalmediation. One form is to be used for early mediation with a mediator from the multi-door medical malpractice mediator roster; the second form is to be used for early mediation with a private mediator. Both forms also are available in the Multi-Door Dispute Resolution Office, Suite 105, 515 5th Street, N.W. (enter at Police Memorial Plaza entrance). Plaintiff's counsel is responsible for eFiling the form and is required to e-mail a courtesy copy to earlymedmal@dcsc.gov. *Pro se* Plaintiffs who elect not to eFile may file by hand in the Multi-Door Dispute Resolution Office.

A roster of medical malpractice mediators available through the Court's Multi-Door Dispute Resolution Division, with biographical information about each mediator, can be found at www.dccourts.gov/medmalmediation/mediatorprofiles. All individuals on the roster are judges or lawyers with at least 10 years of significant experience in medical malpractice litigation. D.C. Code § 16-2823(a). If the parties cannot agree on a mediator, the Court will appoint one. D.C. Code § 16-2823(b).

The following persons are required by statute to attend personally the Early Mediation Conference: (1) all parties; (2) for parties that are not individuals, a representative with settlement authority; (3) in cases involving an insurance company, a representative of the company with settlement authority; and (4) attorneys representing each party with primary responsibility for the case. D.C. Code § 16-2824.

No later than ten (10) days after the early mediation session has terminated, Plaintiff must eFile with the Court a report prepared by the mediator, including a private mediator, regarding: (1) attendance; (2) whether a settlement was reached; or, (3) if a settlement was not reached, any agreements to narrow the scope of the dispute, limit discovery, facilitate future settlement, hold another mediation session, or otherwise reduce the cost and time of trial preparation. D.C. Code § 16-2826. Any Plaintiff who is *pro se* may elect to file the report by hand with the Civil Clerk's Office. The forms to be used for early mediation reports are available at www.dccourts.gov/medmalmediation.

Chief Judge Rufus G. King, III

Caio.doc

CA Form 1

# Superior Court of the District of Columbia
## CIVIL DIVISION
### 500 Indiana Avenue, N.W., Room JM-170
### Washington, D.C. 20001 Telephone: 879-1133

BENJAMIN RAMEY PRO-SE
4251 CLAY ST. N.E.
WASH. D.C., D.C. 20019

*Plaintiff*

0008000-07

vs.

Civil Action No. _____

POTOMAC ELECTRIC POWER CO.
701 9TH ST. N.W.
WASH., D.C. 20068

*Defendant*

## SUMMONS

To the above named Defendant:

You are hereby summoned and required to serve an Answer to the attached Complaint, either personally or through an attorney, within twenty (20) days after service of this summons upon you, exclusive of the day of service. If you are being sued as an officer or agency of the United States Government or the District of Columbia Government, you have sixty (60) days after service of this summons to serve your Answer. A copy of the Answer must be mailed to the attorney for the party plaintiff who is suing you. The attorney's name and address appear below. If plaintiff has no attorney, a copy of the Answer must be mailed to the plaintiff at the address stated on this Summons.

You are also required to file the original Answer with the Court in Room JM 170 at 500 Indiana Avenue, N.W., between 8:30 a.m. and 5:00 p.m., Mondays through Fridays or between 9:00 a.m. and 12:00 noon on Saturdays. You may file the original Answer with the Court either before you serve a copy of the Answer on the plaintiff or within five (5) days after you have served the plaintiff. If you fail to file an Answer, judgment by default may be entered against you for the relief demanded in the complaint.

*Clerk of the Court*

BENJAMIN RAMEY
Name of Plaintiff's Attorney

4251 CLAY ST. N.E.
Address
WASH. D.C. 20019

By _Crystal Kelley_

(202) 213-8154
Telephone

Date _December 10, 2007_

TE DE OBTENERSE COPIAS DE ESTE FORMULARIO EN ESPAÑOL EN EL TRIBUNAL SUPERIOR DEL DISTRITO DE COLUMBIA, 500 INDIANA AVENUE, N.W., SALA JM 170

YOU MAY OBTAIN A COPY OF THIS FORM IN SPANISH AT THE SUPERIOR COURT OF D.C., 500 INDIANA AVENUE, N.W., ROOM JM 170

NOTE: SEE IMPORTANT INFORMATION ON BACK OF THIS FORM.

## SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
## CIVIL DIVISION

BENJAMIN RAMEY PRO-SE
4251 CLAY ST. N.E.
WASH., D.C. 20019

*Plaintiff*

vs.

POTOMAC ELECTRIC POWER CO.
701 9TH ST. N.W.
WASH., D.C. 20068

*Defendants*

RECEIVED
Civil Clerk's Office
DEC 1 0 2007
Superior Court of the
District of Columbia
Washington, D.C.

CIVIL ACTION NO. 0008000-07

## COMPLAINT

1.  Jurisdiction of this court is founded on D.C. Code Annotated, 2001 edition, as amended, Sec. 11-921.

SEE ATTACHMENTS

Wherefore, Plaintiff demands judgment against Defendant in the sum of $ 3,000,000.00 with interest and costs.

Phone:

DISTRICT OF COLUMBIA, SS

BENJAMIN RAMEY_____, being first duly sworn on oath deposes and says that the foregoing is a just and true statement of the amount owing by defendant to the plaintiff, exclusive of all set-off and just grounds of defense.

_____
(Plaintiff                                    Agent)

Subscribed and sworn to before me this ___10th___ day of ___December___ 20__07__

_____
(Notary Public/Deputy Clerk)

SUPERIOR COURT OF THE DISTRICT OF COLUMBIA

CIVIL DIVISION

BENJAMIN RAMEY
4251 CLAY ST. N.E.
WASH. D.C. 20019

PLAINTIFF,

V.

POTOMAC ELECTRIC POWER
COMPANY,
701 9TH ST. N.W.
WASH. D.C. 20068,

DEFENDANT.

RECEIVED
Civil Clerk's Office
DEC 10 2007
Superior Court of the
District of Columbia
Washington, D.C.

0008000-07

COMPLAINT

VIOLATES FEDERAL DEPARTMENT OF TRANSPORTATION
DOT DRUGS AND ALCOHOL
LAW

1. CONGRESS PASS LAW AUTHORIZING DOT TO ENFORCE THE LAW ON VIOLATORS OF TRUCKING COMPANIES AND ITS EMPLOYEES FOR NON-COMPLIANCE. DOT REGULATES TRUCKING COMPANIES MAINLY TO PREVENT ACCIDENTS OR DEATH TO EMPLOYEES AND THE PUBLIC. EVERY TRUCKING CO. IN THE UNITED STATES IS REGULATED BY DOT, EX.1, SEC. 382.103 IN THE FEDERAL MOTOR CARRIER SAFETY REGULATION (FMCSR) HANDBOOK AND EVERY EMPLOYEE THAT OPERATES A COMMERCIAL MOTOR VEHICAL (CMV) MUST POSSESS A COMMERCIAL DRIVERS LICENSE (CDL), EX.1, SEC. 382.103.

2. EVERY COMPANY IS REQUIRED BY DOT FEDERAL LAW TO ENROLL A DRUGS AND ALCOHOL PROGRAM REQUIRED BY DOT LAW WHEN TESTING AN EMPLOYEE FOR DRUGS OR ALCOHOL.

3. PLAINTIFF REPORTED TO WORK AND WAS ACCUSED OF BEING INTOXICATED. PLAINTIFF WAS HELD OVER 11 HRS. BY DEFENDANT FOR A TEST TO BE ADMINISTERED, BUT DOT REQUIREMENT STATES AN EMPLOYER MUST CEASE TRYING TO ADMINISTER A TEST AFTER 8 HRS., EX.1, SEC. 382.307 (e)(1).

4. PLAINTIFF DROVE A CMV FOR DEFENDANT AND POSSESS A CDL, SO HE IS REQUIRED BY LAW TO BE TESTED UNDER DOT ALCOHOL REQUIREMENTS, EX.2, TESTIMONY UNDER OATH FROM MANAGER OF DEFENDANT.

5. ONE OF AN EMPLOYERS RESPONSIBILITIES PURSUANT TO DOT IS TO HIRE A TECHNICIAN (SERVICE AGENT) QUALIFIED TO CONDUCT THE TEST PURSUANT TO DOT, BUT DEFENDANT HIRED SOMEONE THAT WAS NOT CERTIFIED OR LICENCE TO TEST IN THE DISTRICT, EX.2, PG.169, TESTIMONY UNDER OATH FROM SERVICE AGENT, THAT HE WAS ONLY LICENCE IN VIRGINIA. THE DEFENDANT HAS TO COMPLY WITH THE LAW WHEN TESTING, BY USING QUALIFIED PERSONNEL PURSUANT TO DOT REGULATIONS, EX.1, SEC.40.11 AND SEC.40.15

6. THE SERVICE AGENT THAT TEST PLAINTIFF USED NON DOT TESTING FORM FOR A DOT TEST AND THIS IS PROHIBITED UNDER DOT REQUIREMENTS, EX.1, SEC.40.227.

7. EX.1, SEC.40.413, DOT TEST FORM.

EX.3, TEST FORM USED ON PLAINTIFF.

EX.4, PLAINTIFF'S MEDICAL CARD THAT IS MANDATORY TO POSSESS WITH A CDL WHEN OPERATING A DMV.

8. THE SERVICE AGENT THAT THE DEFENDANT EMPLOYED ALTERED PLAINTIFF'S ALCOHOL TEST TO CONVICT HIM OF BEING INTOXICATED AND FOR THAT REASON PLAINTIFF WAS TERMINATED, LOST 12 YEARS OF SAVINGS AND HIS HOME OF 9 YEARS. ALTERING PLAINTIFF'S TEST IS A SERIOUS DOT FEDERAL VIOLATION SUBJECT TO CIVIL OR CRIMINAL PENALTIES, EX.1, SEC.390.35 AND 390.37.

9. ON DEC.10,2005 AN ARBITRATOR RULED WITH DEFENDANT AFTER THE LOCAL ARGUED THE TEST WAS IMPROPERLY ADMINISTERED BECAUSE PLAINTIFF WAS BOUND BY DOT TESTING AND NOT THE COMPANY POLICY, BUT THE ARBITRATOR INSISTED THAT THE COMPANY WAS

THE ATTORNEYS FOR DEFENDANT HAVE ALSO AGREED THAT THE COMPANY POLICY WAS ENOUGH OF A REASON TO DISCIPLINE PLAINTIFF, SIDING WITH THE ARBITRATORS DECISION, BUT THE ARBITRATOR HAVE NO AUTHORITY TO ALLOW A COMPANY POLICY TO SUPERSEDE FEDERAL LAW CONGRESS PASS. ATTORNEYS FOR DEFENDANT KNOWINGLY REPRESENTED FEDERAL VIOLATIONS VIOLATED AND HAVE BEEN USING THE ARBITRATORS DECISION TO PREVAIL, EX.5, ARTICAL 19, THE CONTRACTUAL AGREEMENT BETWEEN THE DEFENDANT AND LOCAL. EX.5, SEC.18.04 PLAINLY STATES THE ARBITRATORS POSITION, SO WHY ARE THE ATTYS. COVERING UP FEDERAL VIOLATIONS VIOLATED BY DEFENDANT. WHO AUTHORIZED DEFENDANT TO SUPERSEDE FED LAW.

10. PLAINTIFF WAS TERMINATED AND THE DEFENDANT NEED TO BE HELD ACCOUNTABLE FOR ALL THE FEDERAL VIOLATIONS THAT WERE INTENTIONALLY VIOLATED AND COVERED UP BY THE ATTORNEYS.

11. IN VIOLATING ALL THE DOT VIOLATIONS, THE CONCLUSION OF PLAINTIFFS TEST BY A U.S. SUP.CT. TRAFFIC PANEL MEMBER ATTY. CONFIRMS THAT THE TEST WAS FORENSICALLY INVALID, EX.6 LETTER FROM ATTY. THAT THE COURT RELY ON AS HIGHLY CREDIBLE.

PLAINTIFF REQUEST TO BE COMPENSATED FOR COMPENSATORY AND PUNITIVE DAMAGES IN THE AMOUNT OF $5,000,000.00.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY THAT ON THE 7TH DAY OF DEC. 2007, I HAVE CAUSED A TRUE AND CORRECT COPY OF THIS MOTION TO BE SERVED VIA FIRST CLASS MAIL POSTAGE PAID UPON THE FOLLOWING:

CONNIE BERTRAM, ESQ.
WINSTON + STRAWN
1700 K ST. N.W.
WASH. D.C. 20006

BENJAMIN RAMEY
4251 CLAY ST. N.E.
WASH. D.C. 20019
(202)213-8154

Ex.1

Federal Motor Carrier

# SAFETY
# Regulations

## Pocketbook

Contains
the New
Hours of Service
Regulations!

§40.7

## §40.7 How can you get an exemption from a requirement in this regulation?

(a) If you want an exemption from any provision of this part, you must request it in writing from the Office of the Secretary of Transportation, under the provisions and standards of 49 CFR part 5. You must send requests for an exemption to the following address: Department of Transportation, Deputy Assistant General Counsel for Regulation and Enforcement, 400 7th Street, SW., Room 10424, Washington, DC 20590.

(b) Under the standards of 49 CFR part 5, we will grant the request only if the request documents special or exceptional circumstances, not likely to be generally applicable and not contemplated in connection with the rulemaking that established this part, that make your compliance with a specific provision of this part impracticable.

(c) If we grant you an exemption, you must agree to take steps we specify to comply with the intent of the provision from which an exemption is granted.

(d) We will issue written responses to all exemption requests.

# Subpart B — Employer Responsibilities

## §40.11 What are the general responsibilities of employers under this regulation?

(a) As an employer, you are responsible for meeting all applicable requirements and procedures of this part.

(b) You are responsible for all actions of your officials, representatives, and agents (including service agents) in carrying out the requirements of the DOT agency regulations.

(c) All agreements and arrangements, written or unwritten, between and among employers and service agents concerning the implementation of DOT drug and alcohol testing requirements are deemed, as a matter of law, to require compliance with all applicable provisions of this part and DOT agency drug and alcohol testing regulations. Compliance with these provisions is a material term of all such agreements and arrangements.

## §40.13 How do DOT drug and alcohol tests relate to non-DOT tests?

(a) DOT tests must be completely separate from non-DOT tests in all respects.

(b) DOT tests must take priority and must be conducted and completed before a non-DOT test is begun. For example, you must discard any excess urine left over from a DOT test and collect a separate void for the subsequent non-DOT test.

(c) Except as provided in paragraph (d) of this section, you must not perform any tests on DOT urine or breath specimens other than those specifically authorized by this part or DOT agency regulations. For example, you may not test a DOT urine specimen for additional drugs, and a laboratory is prohibited from making a DOT urine specimen available for a DNA test or other types of specimen identity testing.

(d) The single exception to paragraph (c) of this section is when a DOT drug test collection is conducted as part of a physical examination required by DOT agency regulations. It is permissible to conduct required medical tests related to this physical examination (*e.g.*, for glucose) on any urine remaining in the collection container after the drug test urine specimens have been sealed into the specimen bottles.

(e) No one is permitted to change or disregard the results of DOT tests based on the results of non-DOT tests. For example, as an employer you must not disregard a verified positive DOT drug test result because the employee presents a negative test result from a blood or urine specimen collected by the employee's physician or a DNA test result purporting to question the identity of the DOT specimen.

(f) As an employer, you must not use the CCF or the ATF in your non-DOT drug and alcohol testing programs. This prohibition includes the use of the DOT forms with references to DOT programs and agencies crossed out. You also must always use the CCF and ATF for all your DOT-mandated drug and alcohol tests.

## §40.15 May an employer use a service agent to meet DOT drug and alcohol testing requirements?

(a) As an employer, you may use a service agent to perform the tasks needed to comply with this part and DOT agency drug and alcohol testing regulations, consistent with the requirements of Subpart Q and other applicable provisions of this part.

(b) As an employer, you are responsible for ensuring that the service agents you use meet the qualifications set forth in this part (*e.g.*, §40.121 for MROs). You may require service agents to show you documentation that they meet the requirements of this part (e.g., documentation of MRO qualifications required by

§40.227

## §40.225 What form is used for an alcohol test?

(a) The DOT Alcohol Testing Form (ATF) must be used for every DOT alcohol test beginning February 1, 2002. The ATF must be a three-part carbonless manifold form. The ATF is found in Appendix G to this part. You may view this form on the ODAPC web site (http://www.dot.gov/ost/dapc).

(b) As an employer in the DOT alcohol testing program, you are not permitted to modify or revise the ATF except as follows:

(1) You may include other information needed for billing purposes, outside the boundaries of the form.

(2) You may use a ATF directly generated by an EBT which omits the space for affixing a separate printed result to the ATF, provided the EBT prints the result directly on the ATF.

(3) You may use an ATF that has the employer's name, address, and telephone number preprinted. In addition, a C/TPA's name, address, and telephone number may be included, to assist with negative results.

(4) You may use an ATF in which all pages are printed on white paper. You may modify the ATF by using colored paper, or have clearly discernable borders or designation statements on Copy 2 and Copy 3. When colors are used, they must be green for Copy 2 and blue for Copy 3.

(5) As a BAT or STT, you may add, on the "Remarks" line of the ATF, the name of the DOT agency under whose authority the test occurred.

(6) As a BAT or STT, you may use a ATF that has your name, address, and telephone number preprinted, but under no circumstances can your signature be preprinted.

(c) As an employer, you may use an equivalent foreign-language version of the ATF approved by ODAPC. You may use such a non-English language form only in a situation where both the employee and BAT/STT understand and can use the form in that language.

## §40.227 May employers use the ATF for non-DOT tests, or non-DOT forms for DOT tests?

(a) No, as an employer, BAT, or STT, you are prohibited from using the ATF for non-DOT alcohol tests. You are also prohibited from using non-DOT forms for DOT alcohol tests. Doing either subjects you to enforcement action under DOT agency regulations.

§§40.127(g), 40.129(d), 40.159(a)(4)(ii); 40.161(b): **Reports to** DER that test is cancelled

§40.129 (d): Report of test results to DER

§40.129(g)(1): Report to DER of confirmed positive test in stand-down situation

§§40.149(b): Report to DER of changed test result

§40.155(a): Report to DER of dilute specimen

§40.167(b) and (c): Reports of test results to DER

§40.187(a)-(f) Reports to DER concerning the reconfirmation of tests

§40.191(d): Notice to DER concerning refusals to test

§40.193(b)(3): Notification to DER of refusal in shy bladder situation

§40.193(b)(4): Notification to DER of insufficient specimen

§40.193(b)(5): Transmission of CCF copies to DER (not to MRO)

§40.199: Report to DER of cancelled test and direction to DER for additional collection

§40.201: Report to DER of cancelled test

## Alcohol Testing Information

§40.215: Notice to BATs and STTs of contact information for DER

§40.241(b)(1): Notification to DER that an employee is a "no show" for an alcohol test

§40.247(a)(2): Transmission of alcohol screening test results only when the test result is less than 0.02

§40.255(a)(4): Transmission of alcohol confirmation test results only when the test result is less than 0.02

§40.263(a)(3) and 263(b)(3): Notification of insufficient saliva and failure to provide sufficient amount of breath

## Appendix G to Part 40—Alcohol Testing Form

The following form is the alcohol testing form required for use in the DOT alcohol testing program beginning August 1, 2001. Use of the form is authorized beginning January 18, 2001.

**§40.413**

## U.S. Department of Transportation (DOT)
## Alcohol Testing Form

*(The instructions for completing this form are on the back of Copy 3)*

**Step 1: TO BE COMPLETED BY ALCOHOL TECHNICIAN**

A: Employee Name _____
(Print)    (First, M.I., Last)

B: SSN or Employee ID No. _____

C: Employer Name _____
Street
City, ST ZIP _____

DER Name and
Telephone No.
DER Name _____    (___) ___ DER Phone Number

D: Reason for Test: □Random  □Reasonable Susp  □Post-Accident  □Return to Duty  □Follow-up  □Pre-employment

**STEP 2: TO BE COMPLETED BY EMPLOYEE**

I certify that I am about to submit to alcohol testing required by US Department of Transportation regulations and that the identifying information provided on the form is true and correct.

Signature of Employee _____    Date  Month Day Year  /  /

**STEP 3: TO BE COMPLETED BY ALCOHOL TECHNICIAN**

(If the technician conducting the screening test is not the same technician who will be conducting the confirmation test, each technician must complete their own form.) I certify that I have conducted alcohol testing on the above named individual in accordance with the procedures established in the US Department of Transportation regulation, 49 CFR Part 40, that I am qualified to operate the testing device(s) identified, and that the results are as recorded.

**TECHNICIAN:** □BAT  □STT    **DEVICE:** □SALIVA  □BREATH*  **15-Minute Wait:** □ Yes □ No

**SCREENING TEST:**  *(For BREATH DEVICE* write in the space below only if the testing device is not designed to print.)*

| Test # | Testing Device Name | Device Serial # OR Lot # & Exp Date | Activation Time | Reading Time | Result |
|--------|---------------------|-------------------------------------|-----------------|--------------|--------|

**CONFIRMATION TEST:** Results MUST be affixed to each copy of this form or printed directly onto the form

**REMARKS:**
_____
_____
_____

Alcohol Technician's Company _____    Company Street Address _____

(PRINT) Alcohol Technician's Name (First, M.I., Last)    Company City, State, Zip    (___) ___ Phone Number

Signature of Alcohol Technician _____    Date  Month Day Year  /  /

**STEP 4: TO BE COMPLETED BY EMPLOYEE IF TEST RESULT IS 0.02 OR HIGHER**

I certify that I have submitted to the alcohol test, the results of which are accurately recorded on this form. I understand that I must not drive, perform safety-sensitive duties, or operate heavy equipment because the results are 0.02 or greater.

Signature of Employee _____    Date  Month Day Year  /  /

*Affix
Or
Print
Screening Results
Here*

*Affix
With
Tamper Evident Tap*

*Affix
Or
Print
Confirmation Result
Here*

*Affix
With
Tamper Evident
Tape*

*Affix
Or
Print
Additional Results
Here*

*Affix
With
Tamper Evident
Tape*

**COPY 1 – ORIGINAL – FORWARD TO THE EMPLOYER**

§382.101

# Subpart A — General

## §382.101 Purpose.

The purpose of this part is to establish programs designed to help prevent accidents and injuries resulting from the misuse of alcohol or use of controlled substances by drivers of commercial motor vehicles.

## §382.103 Applicability.

(a) This part applies to every person and to all employers of such persons who operate a commercial motor vehicle in commerce in any State, and is subject to:

(1) The commercial driver's license requirements of part 383 of this subchapter;

(2) The Licencia Federal de Conductor (Mexico) requirements; or

(3) The commercial drivers license requirements of the Canadian National Safety Code.

(b) An employer who employs himself/herself as a driver must comply with both the requirements in this part that apply to employers and the requirements in this part that apply to drivers. An employer who employs only himself/herself as a driver shall implement a random alcohol and controlled substances testing program of two or more covered employees in the random testing selection pool.

(c) The exceptions contained in §390.3(f) of this subchapter do not apply to this part. The employers and drivers identified in §390.3(f) of this subchapter must comply with the requirements of this part, unless otherwise specifically provided in paragraph (d) of this section.

(d) **Exceptions.** This part shall not apply to employers and their drivers:

(1) Required to comply with the alcohol and/or controlled substances testing requirements of part 655 of this title (Federal Transit Administration alcohol and controlled substances testing regulations); or

(2) Who a State must waive from the requirements of part 383 of this subchapter. These individuals include active duty military personnel; members of the reserves; and members of the national guard on active duty, including personnel on full-time national guard duty, personnel on part-time national guard training and national guard military technicians (civilians who are required to

## §382.307 Reasonable suspicion testing.

(a) An employer shall require a driver to submit to an alcohol test when the employer has reasonable suspicion to believe that the driver has violated the prohibitions of subpart B of this part concerning alcohol. The employer's determination that reasonable suspicion exists to require the driver to undergo an alcohol test must be based on specific, contemporaneous, articulable observations concerning the appearance, behavior, speech or body odors of the driver.

(b) An employer shall require a driver to submit to a controlled substances test when the employer has reasonable suspicion to believe that the driver has violated the prohibitions of subpart B of this part concerning controlled substances. The employer's determination that reasonable suspicion exists to require the driver to undergo a controlled substances test must be based on specific, contemporaneous, articulable observations concerning the appearance, behavior, speech or body odors of the driver. The observations may include indications of the chronic and withdrawal effects of controlled substances.

(c) The required observations for alcohol and/or controlled substances reasonable suspicion testing shall be made by a supervisor or company official who is trained in accordance with §382.603. The person who makes the determination that reasonable suspicion exists to conduct an alcohol test shall not conduct the alcohol test of the driver.

(d) Alcohol testing is authorized by this section only if the observations required by paragraph (a) of this section are made during, just preceding, or just after the period of the work day that the driver is required to be in compliance with this part. A driver may be directed by the employer to only undergo reasonable suspicion testing while the driver is performing safety-sensitive functions, just before the driver is to perform safety-sensitive functions, or just after the driver has ceased performing such functions.

(e)(1) If an alcohol test required by this section is not administered within two hours following the determination under paragraph (a) of this section, the employer shall prepare and maintain on file a record stating the reasons the alcohol test was not promptly administered. If an alcohol test required by this section is not administered within eight hours following the determination under paragraph (a) of this section, the employer shall cease attempts to administer an alcohol test and

shall state in the record the reasons for not administering the test.

(2) Notwithstanding the absence of a reasonable suspicion alcohol test under this section, no driver shall report for duty or remain on duty requiring the performance of safety-sensitive functions while the driver is under the influence of or impaired by alcohol, as shown by the behavioral, speech, and performance indicators of alcohol misuse, nor shall an employer permit the driver to perform or continue to perform safety-sensitive functions, until:

(i) An alcohol test is administered and the driver's alcohol concentration measures less than 0.02; or

(ii) Twenty four hours have elapsed following the determination under paragraph (a) of this section that there is reasonable suspicion to believe that the driver has violated the prohibitions in this part concerning the use of alcohol.

(3) Except as provided in paragraph (e)(2) of this section, no employer shall take any action under this part against a driver based solely on the driver's behavior and appearance, with respect to alcohol use, in the absence of an alcohol test. This does not prohibit an employer with independent authority of this part from taking any action otherwise consistent with law.

(f) A written record shall be made of the observations leading to an alcohol or controlled substances reasonable suspicion test, and signed by the supervisor or company official who made the observations, within 24 hours of the observed behavior or before the results of the alcohol or controlled substances tests are released, whichever is earlier.

### §382.309 Return-to-duty testing.

The requirements for return-to-duty testing must be performed in accordance with 49 CFR part 40, Subpart O.

### §382.311 Follow-up testing.

The requirements for follow-up testing must be performed in accordance with 49 CFR part 40, Subpart O.

# Subpart D — Handling of Test Results, Record Retention and Confidentiality

### §382.401 Retention of records.

(a) *General requirement.* Each employer shall maintain

216

§390.35

(5) Each roll of film shall include a microfilm of a certificate or certificates stating that the photographs are direct or facsimile reproductions of the original records. Such certificate(s) shall be executed by a person or persons having personal knowledge of the material covered thereby.

(c) All records and documents required to be maintained under this subchapter may be destroyed after they have been suitably photographed for preservation.

(d) **Exception.** All records except those requiring a signature may be maintained through the use of computer technology provided the motor carrier can produce, upon demand, a computer printout of the required data.

## §390.33 Commercial motor vehicles used for purposes other than defined.

Whenever a commercial motor vehicle of one type is used to perform the functions normally performed by a commercial motor vehicle of another type, the requirements of this subchapter and Part 325 of Subchapter A shall apply to the commercial motor vehicle and to its operation in the same manner as though the commercial motor vehicle were actually a commercial motor vehicle of the latter type.

**Example:** If a commercial motor vehicle other than a bus is used to perform the functions normally performed by a bus, the regulations pertaining to buses and to the transportation of passengers shall apply to that commercial motor vehicle.

## §390.35 Certificates, reports, and records: falsification, reproduction, or alteration.

No motor carrier, its agents, officers, representatives, or employees shall make or cause to make—

(a) A fraudulent or intentionally false statement on any application, certificate, report, or record required by Part 325 of subchapter A or this subchapter;

(b) A fraudulent or intentionally false entry on any application, certificate, report, or record required to be used, completed, or retained, to comply with any requirement of this subchapter or Part 325 of Subchapter A; or

(c) A reproduction, for fraudulent purposes, of any application, certificate, report, or record required by this subchapter or Part 325 of Subchapter A.

NEXT PG.

§390.37

## §390.37 Violation and penalty.

Any person who violates the rules set forth in this subchapter or Part 325 of Subchapter A may be subject to civil or criminal penalties.

## Subpart C — [Removed and reserved.]

## Subpart D — [Removed and reserved.]



jhl

JH

1

# GOVERNMENT OF THE DISTRICT OF COLUMBIA

## DEPARTMENT OF EMPLOYMENT SERVICES

### HEARINGS AND ADJUDICATION SECTION

```
- - - - - - - - - - - - - x
                          :
BENJAMIN F. RAMEY,        :
                          :
        Claimant,         :
                          :
     v.                   :    OHA No. 05-318
                          :
POTOMAC ELECTRIC POWER    :    OWC/ODC No. 608087
COMPANY,                  :
                          :
        Employer,         :
                          :
     and                  :
                          :
CHC,                      :
                          :
        Carrier.          :
                          :
- - - - - - - - - - - - - x
```

Wednesday, August 17, 2005

64 New York Avenue, N.E.
Washington, D.C. 20002

The hearing in the above-entitled matter

was convened, pursuant to notice, at 2:26 p.m.

BEFORE:

AMELIA G. GOVAN
Administrative Law Judge

MILLER REPORTING CO., INC.
735 9th STREET, S.E.
WASHINGTON, D.C. 20003-1802
(202) 546-6666

jhl                                                                 3

## C O N T E N T S

| WITNESS | DIRECT | CROSS | REDIRECT | RECROSS |
|---------|--------|-------|----------|---------|
| Benjamin F. Ramey | 14 | 55 | 96 | -- |
| Lamar L. Dudley | 99 | 114 | 120 | 122 |
|   Further Redirect | | | 123 | |
| Gregory M. Johnson, Sr. | 126 | 145 | 152 | -- |
| Thomas Hyde | 156 | 164 | 177 | -- |
| Negussie Birratu | 181 | 191 | 201 | 204 |
| David A. Duarte | 207 | 234 | 247 | 249 |

## EXHIBITS

| CLAIMANT'S | IDENTIFIED | RECEIVED |
|------------|------------|----------|
| 1 - 5 | (Previously) | 9 |
| 6 | (Previously) | 179 |
| EMPLOYER'S | | |
| 1 through 8 | (Previously) | 11 |
| 9 | (Previously) | -- |
| 10 | (Previously) | 240 |

1      A    Approximately.  I don't have the form in

2  front of me.

3      Q    Let me ask you this.  Are you licensed to

4  perform tests in the District of Columbia?

5      A    I don't have a license.  I am a certified

6  breath alcohol technician, yes.

7      Q    Nevertheless, anybody who works in the

8  District of Columbia is governed under the

9  Department of--Regulatory Commission.  Isn't that

10 correct?

11     A    I don't know.

12     Q    But you do not have a license to conduct

13 tests in the District of Columbia?

14     A    I'm licensed in the State of Virginia,

15 right.

16     Q    Mr. Ramey was provided a form, isn't that

17 correct, of the results of the test?

18     A    Yes, ma'am.

19     Q    I'm going to show you.

20     A    Thank you.

21     Q    Do you recognize that form?

22     A    Yes, ma'am.

DURATE'S TESTIMONY

jhl                                                                    212

1    on his feet.  He was slurring his words.  And, yes,

2    his eyes were very, very bloodshot.

3            And so after observing this and just his--

4    his mannerisms, how he held his hands, how he--how

5    his body moved and what have you, I--and of course

6    the--the smelling of the alcohol, I determined that

7    he needed to be tested.  Because at that time we

8    were in a--in a storm condition, he was a truck

9    driver in conduit which meant that he would be

10   going out into the community.  He had to be at the

11   top of his senses because of the danger.  It's a

12   danger in and by itself if you're--you're in--

13   you're well tested and didn't have any alcohol in

14   your system.  So and we have had some fatalities at

15   PEPCO so we were very, very astute to the fact that

16   we wanted to keep a close watch on this.

17       Q    What was the purpose of ordering testing

18   for Mr. Ramey?

19       A    When--when Mr. Ramey is a commercial motor

20   vehicle driver, we are bound by the Department of

21   Transportation that if an individual reports to

22   work under the influence of alcohol or he's

*Ex. 3*

# Alcohol Testing Form

*(The instructions for completing this form are on the back of Copy 3) –*

---

**STEP 1: TO BE COMPLETED BY ALCOHOL TECHNICIAN**

A. Employee Name ___BENJAMIN F. RAMEY___
(PRINT) (First, M.I., Last)

B. SSN or Employee ID No. ___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___

C. Employer Name ___PEPCO___
Street ___701 9TS NW___
City, ST ZIP, ___WASHINGTON DC 20001___

DER Name and
Telephone No. ___NERUSSIG BRDRATH___    ___802) 872-36___
DER Name                                DER Phone Number

D. Reason For Test: ☐ Random ☑ Reasonable Susp ☐ Post-Accident ☐ Return to Duty ☐ Follow-up ☐ Pre-employment

---

**STEP 2: TO BE COMPLETED BY EMPLOYEE**

I certify that I am about to submit to alcohol testing and that the identifying information provided on the form is true and correct.

Signature of Employee ___[signature]___    Date ___8 | 30 | 0___
Month  Day  Ye

---

**STEP 3: TO BE COMPLETED BY ALCOHOL TECHNICIAN**

...he technician conducting the screening test is not the same technician who will be conducting the confirmation test, each technician must complete their own form. I certify that I have conducted alcohol testing on the above named individual, that I am qualified to operate the testing device(s) identified, and that the results are as recorded.

TECHNICIAN: ☑ SAT ☐ STT    DEVICE: ☐ SALIVA ☑ BREATH* ☐ 15-Minute Wait: ☐ Yes ☐ No

SCREENING TEST: *(For BREATH DEVICE\* write in the space below only if the testing device is not designed to print.*

| Test # | Testing Device Name | Device Serial # OR Lot # & Exp Date | Activation Time | Reading Time | Result |
|--------|--------------------|--------------------------------------|-----------------|--------------|--------|
|        |                    |                                      |                 |              |        |

CONFIRMATION TEST: *Results MUST be affixed to each copy of this form or printed directly onto the form.*

Remarks: _____

___Mio Atlanta Drug Testing___    ___13615 Deut Tree Circle___
Alcohol Technician's Company          Company Street Address

___Thomas HYDE___    ___Centrevile Va 20121 (703) 802-223___
(PRINT) Alcohol Technician's Name (First, M.I., Last)    Company City, State, Zip    Phone Number

___[signature]___    ___8 | 30 | 0___
Signature of Alcohol Technician    Date  Month  Day  Ye

---

**STEP 4: TO BE COMPLETED BY EMPLOYEE IF TEST RESULT IS 0.02 OR HIGHER**

...tify that I have submitted to the alcohol test, the results of which are accurately recorded on this form. I understand ...at I must not drive, perform safety-sensitive duties, or operate heavy equipment because the results are 0.02 or greater.

___[signature]___    ___/0___
Signature of Employee    Month  Day  Ye

BREATHALYZER 7410
SERIAL # : ARHK-1

BREATHALYZER PRINT
SERIAL # : ARHL-04
PRINTER LOG #: 0050

MM.DD.YY HH:MM
08.30.03 11:09

*********************
* TEST NUMBER: 0125
*
* AIR-BLANK TEST:
*    0.000 PERCENT
*
* BREATH TEST:
*    0.079 PERCENT
*********************
URTIA ACCEPTED

BREATHALYZER 7410
SERIAL. # : ARHK-10

BREATHALYZER PRINTE
SERIAL # : ARHL-04
PRINTER LOG #: 0050

MM.DD.YY HH:MM
08.30.03 11:32

*********************
* TEST NUMBER: 0125
*
* AIR-BLANK TEST:
*    0.000 PERCENT
*
* BREATH TEST:
*    0.065 PERCENT
*********************

DRY-GAS ACCURACY TES

BREATHALYZER 7410
SERIAL # : ARHK-103
TEST # : 01254

BREATHALYZER PRINTER
SERIAL # : ARHL-049
PRINTER LOG #: 0050

MM.DD.YY HH:MM
08.30.03 11:59

*********************
* LABELED BAC VALUE:
*    0.040 PERCENT B
*
* CORRECTED BAC VALU
*0.040    PERCENT E
*
* ACCURACY TEST RESU
*    0.039 PERCENT B
TECHNICIAN SIGNAT



## MEDICAL EXAMINER'S CERTIFICATE

_[signature]_

I certify that I have examined _[signature]_ in accordance with the Federal Motor Carrier Safety Regulations (49 CFR 391.41-391.49) and with knowledge of the driving duties, I find this person is qualified; and, if applicable, only when:

☐ wearing corrective lenses
☐ wearing hearing aid
☐ accompanied by a _____ waiver/exemption

☐ driving within an exempt intracity zone (49 CFR 391.62)
☐ accompanied by a Skill Performance Evaluation Certificate (SPE)
☐ qualified by operation of 49 CFR 391.64

The information I have provided regarding this physical examination is true and complete. A complete examination form with any attachment embodies my findings completely and correctly, and is on file in my office.

| SIGNATURE OF MEDICAL EXAMINER | TELEPHONE 9/336-6555 | DATE 12/17/17 |
|---|---|---|

| MEDICAL EXAMINER'S NAME (PRINT) Edwin C. Mumm DC | ☑ MD ☐ DO ☐ Physician Assistant | ☐ Chiropractor ☐ Advanced Practice Nurse |
|---|---|---|

| MEDICAL EXAMINER'S LICENSE OR CERTIFICATE NO. / ISSUING STATE 105476 |
|---|

| SIGNATURE OF DRIVER Benjamin S. Raney | DRIVER'S LICENSE NO. 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 D.C. | STATE |
|---|---|---|

| ADDRESS OF DRIVER 4251 Clay St N.E. |
|---|

| MEDICAL CERTIFICATE EXPIRATION DATE 12/17/05 |
|---|

DISTRIBUTION: 1 COPY TO THE DRIVER, 1 COPY TO THE MOTOR CARRIER

*Ex. 5*

# AGREEMENT

## AND

ANNEX A
STANDARD WAGE CLASSIFICATION
AGREEMENT OF MAY 30, 2004
BETWEEN



POTOMAC ELECTRIC POWER COMPANY
AND
PHI SERVICE COMPANY



AND



LOCAL UNION #1900
OF THE
INTERNATIONAL BROTHERHOOD
OF
ELECTRICAL WORKERS

EFFECTIVE May 30, 2004
2004 - 2008

With Wage and Salary Schedule
Effective
May 30, 2004
May 29, 2005
June 4, 2006
June 3, 2007
June 1, 2008

# CONTENTS

|  |  | Page Number |
|---|---|---|
| Preamble | ................................................................................ | 1 |
| Article 1 | Management ............................................................... | 1 |
| Article 2 | Bargaining Unit .......................................................... | 1 |
| Article 3 | Union Membership and Dues Deductions ................................................................ | 2 |
| Article 4 | Union Business ........................................................... | 4 |
| Article 5 | Pay Progression, Work Assignments and Job Classifications ........................................................... | 6 |
| Article 6 | Special Premiums ...................................................... | 11 |
| Article 7 | Overtime ................................................................... | 15 |
| Article 8 | Seniority ................................................................... | 21 |
| Article 9 | Reduction in Working Forces .................................... | 25 |
| Article 10 | General Provisions .................................................... | 28 |
| Article 11 | Holidays ................................................................... | 29 |
| Article 12 | Vacations ................................................................. | 30 |
| Article 13 | Sickness Disability Allowances ................................ | 33 |
| Article 14 | Leave of Absence ..................................................... | 38 |
| Article 15 | Limited Service .......................................................... | 41 |
| Article 16 | Suspension and Discharge ........................................ | 42 |
| Article 17 | Grievance Procedure ................................................. | 43 |
| Article 18 | Arbitration ................................................................. | 45 |
| Article 19 | Applicable Laws and Regulations ............................. | 46 |
| Article 20 | Safety and Health ..................................................... | 47 |
| Article 21 | Unauthorized Work Stoppages, Slowdowns, or Lockouts ................................................................... | 47 |
| Article 22 | Benefit Plans ............................................................. | 48 |
| Article 23 | Identify of Parties and Complete Agreement ............. | 51 |
| Article 24 | Duration, Reopening and Renewal ............................ | 51 |

**Section 18.04.** The arbitration hearing shall be held as quickly as possible. The award of the Arbitrator shall be final and binding upon both parties and upon the employee(s) involved. The fees and expenses of the Arbitrator, and any other expenses agreed to by the parties prior to the arbitration hearing, shall be shared equally by the Company and the Union. The Arbitrator shall have power and authority to arbitrate only those matters expressly made subject to arbitration by the terms of this Agreement and shall rule only on the issues submitted to him/her. The Arbitrator shall have power only to interpret this Agreement and shall not have the power to alter or amend it.

**Section 18.05.** At the request of either party, a grievance involving the discharge or discipline of an employee shall be submitted to Expedited Arbitration (as defined below). The Arbitrator for such Expedited Arbitrations shall be appointed from a standing panel of at least ten (10) Arbitrators agreed to by the parties in the Memorandum of Understanding by which this Agreement was established. As soon as practicable after receipt of the arbitration request referred to in Section 18.02 above, the parties shall try to agree on a date(s) to arbitrate the case. If agreement is reached, the parties shall notify the American Arbitration Association (hereinafter "AAA") of the desired date(s). The AAA will then appoint an Arbitrator from the parties' standing panel who is available on the requested date(s). Prior to the parties' selection of a mutually acceptable date(s), neither party shall be informed of the availability of a named Arbitrator on a particular date. If the parties are unable to agree on a date within two (2) weeks after receipt of the request for arbitration, either party may so notify the AAA, requesting that the AAA appoint an Arbitrator who will set the time and date(s) after considering the parties' positions on when the case should be heard. In appointing Arbitrators under this Section, the AAA shall make every effort to evenly distribute the cases among the standing panel of Arbitrators. The Expedited Arbitration will be conducted according to the Expedited Arbitration rules generally in effect, except to the extent inconsistent with this Section.

## ARTICLE 19

### APPLICABLE LAWS AND REGULATIONS

**Section 19.01.** It is understood and agreed that the provisions of this Agreement are in all respects subject to all applicable laws and governmental regulations now or hereafter in effect and to the lawful rulings and orders of all regulatory commissions now or hereafter having jurisdiction. Should any provision of this Agreement be found to be in conflict with any applicable laws or lawful rulings or regulations, the parties shall at once meet for the purpose of discussing and/or modifying that portion of the Agreement only.

**Section 19.02.** The Company will endeavor to comply with all state and local laws and regulations relating to the safety and health of employees and will take such additional steps as may be necessary to make adequate provision therefore, including the establishment and maintenance of appropriate first aid stations and other facilities. The Company will also formulate and publish safety rules to which the employees shall be required to conform.







# Bryan W. Brown

**Attorney at Law**

400 Fifth Street, NW
Suite 300
Washington, DC 20001
(202) 639-0221
attorney@bryanwbrown.com

To:     William Bach
From:   Bryan W. Brown
Re:     Benjamin Ramey
Date:   July 19, 2007

     I am currently an attorney barred to practice law in the District of Columbia and the Commonwealth of Virginia. I am a member of the D.C. Superior Court Traffic Panel and a Duty Attorney in D.C. Superior Court. I have been practicing in the area of criminal defense with a primary focus on defense of alcohol related driving offenses for over 5 years. I attend annual trainings regarding breath testing and the potential errors associated with breath testing. With the knowledge I have gained in my legal practice and educational seminars I have evaluated the documents presented. Those documents included an "Alcohol Testing Form" with a printout from a Breathalyzer 7419 xeroxed onto it, a Memo from Pepco dated September 30, 2003, a Employee Grievance Form, a Certificate of Training, a two page Delcaration of Laman Dudley, and a statement by Benjamin Ramey. After reviewing the materials, it is apparent that the breath test conducted on Mr. Ramey is not forensically valid. The test was not conducted sufficiently close in time to the incident for the results to be valid. The U.S. Capital Police Breath Testing Training manual requires two tests to be conducted no more then 10 minutes apart so that accuracy can be demonstrated. That was not done with Mr. Ramey's test. Capital Police standards also require the testing to be done within two hours, which was also not done in Mr. Ramey's case.

     A test so far after an individual could have possible had a drink is highly unreliable. There are many factors to consider some of which include whether the individual was in the absorption, distribution, or elimination phase. That is to say was any alcohol consumed being absorbed into his blood, distributed throughout his blood, or eliminated from his blood. Generally, once an elimination phase is reached, the body eliminates alcohol at a rate of approximately .015% per hour. This number, however, can vary dramatically depending on the individual. Furthermore, the time a person remains in the three phases also varies dramatically. These factors make using a test so remote in time highly unreliable.

     A number of other factors also make breath machine readings unreliable. The inherent margin of error for most machines is around 10%. This error is added to a potentially 15% margin of error that can result from an improper breath pattern near the time of testing. Also added to the total margin of error can be an 8.6% margin of error per 1 degree Celcius difference between actual core body temperature and the assumed core body temperature. Also, Hematocrit level can result in an additonal 14% margin of error. When combined, the total margin of error

of a breath machine can approach 47.6%. This margin of error assumes a test taken shortly after the period when you want to know the Blood Alcohol Content. Additional causes of error can result from partition ratio error, mouth alcohol error, and extrapolation error. Because of the many potential causes of error in breath testing, a direct test of the blood is the most appropriate method for determining actual blood-alcohol levels.

In conclusion, the results of the test used on Mr. Ramey on August 30, 2003 are not forensically valid, and should be of no evidentiary value in determining Mr. Ramey's Blood Alcohol Content while he was on the job some 12 hours prior to the test. The test was taken far too remotely from the time Mr. Ramey was on the job, the two test that were taken were not taken within 10 minutes of each other, and the results of breath test without controls to eliminate potential causes of error make the results unreliable. As such, the results of the breath test should not have been used in the decision of whether or not to take action against Mr. Ramey for alleged violation of PEPCO policy.

# Exhibit B

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

BENJAMIN RAMEY,                      )
4251 Clay St., N.E.                  )
Washington, D.C. 20019,              )
                                     )
            Plaintiff,               )
                                     )
       v.                            )  Case: 1:07-cv-02132
                                        Assigned To : Leon, Richard J.
POTOMAC ELECTRIC POWER                  Assign. Date : 11/26/2007
COMPANY,                                Description: Labor-ERISA
701 9th Street, N.W.
Washington, D.C. 20068,              )
                                     )
            Defendant.               )

## NOTICE OF REMOVAL

Pursuant to 28 U.S.C. §§ 1441 and 1446, Defendant Potomac Electric Power Company

("Pepco") hereby removes to this Court a civil lawsuit filed in the Superior Court of the District

of Columbia, Civil Division, Case No. 0007335-07. In support of its Notice of Removal, Pepco

states:

        1.      On or about November 1, 2007, Plaintiff filed a one-count Complaint alleging

"Wrongful Termination" against Pepco in the Superior Court of the District of Columbia, Civil

Division, Case No. 0007335-07 (the "Superior Court Action"). Pepco was served with a copy of

the Complaint on November 7, 2007. No further pleadings have been filed in this action. A

copy of the Complaint and Summons is attached hereto as Exhibit A.

        2.      This action is removable because Plaintiff's wrongful termination claim falls

within the original federal question jurisdiction of this Court under 28 U.S.C. § 1331 and 28

U.S.C. § 1441. As explained in detail below, Plaintiff's state law claim is founded upon, and

necessarily will require the Court to interpret, the collective bargaining agreement ("CBA")

between Pepco and Plaintiff's Union. Consequently, Plaintiff's state law claims are preempted by

section 301 of the Labor Management Relations Act (29 U.S.C. § 185) and properly removed to

this Court. See Avco Corp. v. Aero Lodge No. 735, 390 U.S. 557, 561 (1968) (case properly

removed to federal court on basis of section 301 preemption where heart of complaint alleged

breach of CBA); Sokos v. Hilton Hotels Corp., 283 F. Supp. 2d 42, 47-50 (D.D.C. 2003)

(wrongful discharge and tortious interference with contract claim preempted by section 301

because resolution required interpretation of CBA).

      3.      It is well-settled that section 301 "provides federal-court jurisdiction over

controversies involving collective-bargaining agreements" and directs federal courts to "fashion

a body of federal law for the enforcement of" them. Sokos, 283 F. Supp. 2d at 46 (citing Lingle

v. Norge Div. of Magic Chef, Inc., 483 U.S. 399, 403 (1988)). As the Supreme Court has

observed, the "preemptive force of section 301 is so powerful as to displace entirely any state

cause of action for violations of [a CBA]." Franchise Tax Bd. v. Construction Laborers Vacation

Trust, 463 U.S. 1 (1983); see also Beneficial Nat'l Bank v. Anderson, 539 U.S. 1, 8 (2003); Bush

v. Clark Const. & Concrete Corp., 267 F. Supp. 2d 43, 45-46 (D.D.C. 2003). The dismissal of

preempted claims advances section 301's goal of "ensur[ing] uniform interpretation of collective

bargaining agreements, and thus. . . promot[ing] the peaceable, consistent resolution of labor-

management disputes." Lingle, 486 U.S. at 413. Thus, if a state law claim depends upon the

meaning or requires the interpretation of a CBA, the claim is preempted. Sokos, 283 F. Supp. 2d

at 46; Grandison v. Wackenhut Services, Inc., 2007 WL 2781892, *3 (D.D.C. 2007). Put

succinctly, when the "heart of the [state law] complaint [is] a . . . clause in the collective

bargaining agreement, that complaint arises under federal law." Caterpillar, Inc. v. Williams,

482 U.S. 386, 394 (1987).

4.      Consistent with these well-established standards, state tort claims are preempted by section 301 if the determination of an element of the tort, such as whether the employer's actions were "wrongful," requires reference to a CBA. As the Fourth Circuit recognized in Foy v. Giant Food Inc., the determination of "whether an employer's actions in dealing with and terminating an employee are wrongful is determined *not in the abstract but necessarily by reference to the collective bargaining agreement which governs the employment relationship.*" 298 F.3d 284, 288 (4th Cir. 2002) (emphasis added); see also Hanks v. General Motors Corp., 859 F.2d 67, 69 (8th Cir. 1988) (wrongful discharge claim based on employee's discharge for failing to return to work after leave of absence preempted because court would be required to interpret CBA's discharge provisions); Grandison v. Wackenhut Servs., Inc., 2007 WL 2781892,*4 (D.D.C. 2007) (section 301 preempted employee's state law claims that employer violated handbook issued pursuant to CBA); Chester v. Washington Metropolitan Area Transit Authority, 335 F. Supp. 2d 57, 64-65 (D.D.C. 2004) (employee's breach of contract and wrongful discharge claims preempted by section 301); Sokos, 283 F. Supp. 2d at 47 (section 301 preempted plaintiff's wrongful discharge claim because it necessarily required the court to examine the meaning of his CBA); Brown v. Gino Morena Enters., 44 F. Supp. 2d 41, 44 (D.D.C. 1999) (employee's wrongful discharge claim subject to section 301).

5.      Plaintiff's wrongful termination claim is clearly preempted by section 301 under these well-established standards. As a Pepco employee employed in the bargaining unit represented by Local 1900 of the International Brotherhood of Electrical Workers ("Union"), the terms and conditions of Plaintiff's employment were governed by the CBA between the Union and Pepco. See Local 1900 CBA, the relevant portions of which are attached as Exhibit B. Article 1 of the CBA contains a management rights provision that vests in Pepco's management

the right to supervise and control its operations and workforce. Ex. B, Art. 1. Moreover,

Articles 1 and 16 of the CBA afford Pepco the right to suspend and discipline employees and to

terminate them for "just cause." Ex. B, Arts. 1, 16. Articles 17 and 18 of the CBA provide

extensive grievance and arbitration procedures for the resolution of disputes between Pepco and

members of the bargaining unit concerning the CBA. Ex. B, Arts. 17-18.

      6.     Pursuant to these provisions of the CBA, Pepco also adopted and published a drug

and alcohol testing policy. See Pepco's Drug and Alcohol Policy, attached hereto as Exhibit C;

Agreement between Pepco and Local 1900 (dated Dec. 16, 1996), attached hereto as Exhibit D.

The policy stated that employees "in any job classification may not have a blood-alcohol

concentration of 0.05% or more (or have a concentration equal to, or in excess of, a

corresponding level as determined by a different diagnostic test such as a Breathalyzer) while on

duty or on Company property." Ex. C at 2. Pepco could require an employee to submit to a

breathalyzer test to detect alcohol or drugs in his system "when there is a triggering event or

reason to believe drugs or alcohol may have been used." Id. at 5. The policy also identified the

discipline that would be applied for violations of the policy. Id. Moreover, any disputes

concerning the policy were resolved pursuant to the grievance and arbitration provisions of the

CBA.

      7.     The resolution of Plaintiff's wrongful termination claim will require the Court to

interpret and apply these provisions of the CBA and the drug and alcohol policy incorporated

into it. In his Complaint, Plaintiff alleges that, on September 1, 2003, Pepco ordered him to take

a breathalyzer test to determine whether he was intoxicated when he reported to work. Comp. ¶¶

1-2. As alleged by Plaintiff, the test results indicated that his blood alcohol level was 0.065%, a

level that exceeded the limits of Pepco's policy. Id. Plaintiff further alleges that, because he

tested positive for alcohol, Pepco required him to enroll in a alcohol treatment program and that he was discharged from the program because he "had taken sick" because of the alcohol testing and placement in the program. Comp. ¶¶ 2-3. Plaintiff further alleges that Pepco wrongfully terminated him "for being accused of being intoxicated." Comp. ¶ 6. Based on these allegations, Plaintiff asserts a common law claim against Pepco for wrongful discharge.

8.    This claim is unquestionably founded upon and will require the interpretation of the CBA between Pepco and Plaintiff's Union. To prevail on his tort claim, Plaintiff must prove that Pepco's alleged conduct was wrongful. Thus, this Court will have to examine the CBA and the policy to determine whether Pepco had the right under them to (1) order Plaintiff to take a breathalyzer test; (2) administer the testing in the manner that it did; (3) discipline him pursuant to the CBA and the policy as a consequence of the test results; and (4) terminate him for failing to comply with the terms of that discipline. As with the situation presented in Foy, these determinations cannot be made "in the abstract," but necessarily must be made by reference to the management, discipline and termination provisions of the CBA and the drug and alcohol testing policy adopted pursuant to it. Foy, 298 F.3d at 288; see also Chapple v. National Starch & Chem. Co.,178 F .3d 501, 504 (7th Cir. 1999) (301 preempted state law claims based on claimed wrongful application of employer's drug policy); Flibotte v. Pennsylvania Truck Lines. Inc., 131 F.3d 21, 27 (1st Cir. 1997) (301 preempted state law claims because the determination of whether employer "was within its rights to require [Plaintiff] to take a drug test at the designated site . . . necessitates examination of the [CBA]"); Clark v. Newport News Shipbuilding & Dry Dock Co., 937 F.2d 934, 938 (4th Cir. 1991) (301 preempted state tort claims because the "rights of [employee and employer] with respect to drug testing can be resolved only by reference to the [CBA] and its express and implied provisions").

- 5 -

9.     The intersection between Plaintiff's state tort claim and the CBA is vividly demonstrated by the arbitrators' rulings on Plaintiff's two grievances pursuant to the CBA.  The first grievance challenged the "decision making leave" ("DML") that Plaintiff received as a consequence of his alcohol testing.  The second grievance challenged Pepco's decision to terminate Plaintiff in November 2004 for violating the terms of that discipline.  These grievances were founded upon the exact factual allegations set forth in Plaintiff's Complaint in this case.

10.     In the December 14, 2004 and July 11, 2005 rulings rejecting these grievances, the arbitrators interpreted a number of the provision of the CBA, including the drug and alcohol testing policy and the discipline and termination provisions.  See Arbitration Decision Number 16 300 00643 04 issued on December 14, 2004, attached hereto as Exhibit E; Arbitration Decision Number 16 300 E 00137 05 issued on July 11, 2005, attached hereto as Exhibit F.  The arbitrators, for instance, ruled that:

(1)     Pepco had reasonable cause to test Ramey on August 30, 2003;

(2)     The testing was accurate and proper and was consistent with the CBA;

(3)     Pepco had the right to issue the DML to Ramey pursuant to the CBA;

(4)     The allegations regarding the conduct of Pepco managers during the testing, even if true, did not warrant overturning the DML;

(5)     Plaintiff's failure successfully to complete the rehabilitation program required by the DML constituted "just cause" to terminate Plaintiff; and

(6)     The delays in terminating Plaintiff did not warrant overturning the termination decision.

Id.  There is no question that the Court will be required to examine and interpret the CBA in resolving these very same allegations and claims in this lawsuit.

- 6 -

11.    Pepco will provide written notice of the filing of this Notice of Removal to the

Clerk of the Superior Court of the District of Columbia.

WHEREFORE, Pepco hereby removes the pending state court action to the United States

District Court for the District of Columbia pursuant to 28 U.S.C. §§ 1441 and 1446.

Respectfully submitted,

Connie N. Bertram (Bar No. 435840)
Winston & Strawn LLP
1700 K Street, N.W.
Washington, D.C. 20006
(202) 282-5000
(202) 282-5100 (fax)

Jill D. Flack (Bar No. 420020)
Associate General Counsel
Potomac Electric Power Company
701 9th Street, NW
Washington, D.C. 20068
(202) 872-2756
(202) 872-3281 (fax)

Counsel for Defendant

DC:537392.3

## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that she caused a true and correct copy of the Notice of

Removal to be served by first class mail, postage prepaid on this 27th day of November, 2007,

on the following individual:

Benjamin Ramey
4251 Clay Street, N.E.
Washington, D.C.  20019

Connie N. Bertram

DC:537392.3

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_BENJAMIN RAMEY_
Plaintiff

v.

_PEPCO_
Defendant

Civil Action No. **07 2340**

**DEC 3 1 2007**

     The above entitled action, removed from the Superior Court for the District of Columbia, has been filed and assigned to Judge **LEON, J. RJL**. All counsel and/or pro se litigants must include on any subsequent pleadings both the civil action number and the initials of the judge assigned to this action. (See preceding sentence for judge's initials).

     Pursuant to Local Rule 83.2(a)(b), an attorney must be a member in good standing of the bar of this Court to appear, file papers or practice. To assist the Clerk's Office in properly recording all counsel of record, counsel for all parties must enter their appearance in accordance with our Local Rule 83.6(a). Timely compliance with this requirement will enable the Clerk's Office to ensure prompt delivery of notices and orders.

     Finally, your attention is called to Local Rule 16.3, Duty to Confer. This rule clearly spells out the duty of counsel, as well as pro se litigants, to confer and report back to the Court on a wide range of questions.

NANCY MAYER-WHITTINGTON, CLERK

By _____
Deputy Clerk

cc: _BENJAMIN RAMEY_

929A
Rev. 7/02

JS-44
(Rev.1/05 DC)

## CIVIL COVER SHEET

| I (a) PLAINTIFFS | DEFENDANTS |
|---|---|
| Benjamin Ramey | Potomac Electric Power Company |

| (b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF   Washington, DC<br>(EXCEPT IN U.S. PLAINTIFF CASES) | COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT   Delaware<br>(IN U.S. PLAINTIFF CASES ONLY)<br>NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF<br>LAND INVOLVED |

| (c) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER) | ATTORNEYS (IF KNOWN) |
|---|---|
|  | Case: 1:07-cv-02340<br>Assigned To : Leon, Richard J.<br>Assign. Date : 12/31/2007<br>Description: Pro Se General Civil |

### II. BASIS OF JURISDICTION
(PLACE AN x IN ONE BOX ONLY)

○ 1 U.S. Government Plaintiff

⊙ 3 Federal Question (U.S. Government Not a Party)

○ 2 U.S. Government Defendant

○ 4 Diversity (Indicate Citizenship of Parties in item III)

### III CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN x IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT) **FOR DIVERSITY CASES ONLY!**

|  | PTF | DFT |  | PTF | DFT |
|---|---|---|---|---|---|
| Citizen of this State | ○ 1 | ○ 1 | Incorporated or Principal Place of Business in This State | ○ 4 | ○ 4 |
| Citizen of Another State | ○ 2 | ○ 2 | Incorporated and Principal Place of Business in Another State | ○ 5 | ○ 5 |
| Citizen or Subject of a Foreign Country | ○ 3 | ○ 3 | Foreign Nation | ○ 6 | ○ 6 |

### IV. CASE ASSIGNMENT AND NATURE OF SUIT
(Place a X in one category, A-N, that best represents your cause of action and one in a corresponding Nature of Suit)

**○ A. Antitrust**

☐ 410 Antitrust

**○ B. Personal Injury/ Malpractice**

☐ 310 Airplane
☐ 315 Airplane Product Liability
☐ 320 Assault, Libel & Slander
☐ 330 Federal Employers Liability
☐ 340 Marine
☐ 345 Marine Product Liability
☐ 350 Motor Vehicle
☐ 355 Motor Vehicle Product Liability
☐ 360 Other Personal Injury
☐ 362 Medical Malpractice
☐ 365 Product Liability
☐ 368 Asbestos Product Liability

**○ C. Administrative Agency Review**

☐ 151 Medicare Act

**Social Security:**
☐ 861 HIA ((1395ff)
☐ 862 Black Lung (923)
☐ 863 DIWC/DIWW (405(g)
☐ 864 SSID Title XVI
☐ 865 RSI (405(g)
**Other Statutes**
☐ 891 Agricultural Acts
☐ 892 Economic Stabilization Act
☐ 893 Environmental Matters
☐ 894 Energy Allocation Act
☐ 890 Other Statutory Actions (If Administrative Agency is Involved)

**○ D. Temporary Restraining Order/Preliminary Injunction**

Any nature of suit from any category may be selected for this category of case assignment.

*(If Antitrust, then A governs)*

---

**○ E. General Civil (Other)       OR       ○ F. Pro Se General Civil**

**Real Property**
☐ 210 Land Condemnation
☐ 220 Foreclosure
☐ 230 Rent, Lease & Ejectment
☐ 240 Torts to Land
☐ 245 Tort Product Liability
☐ 290 All Other Real Property

**Personal Property**
☐ 370 Other Fraud
☐ 371 Truth in Lending
☐ 380 Other Personal Property Damage
☐ 385 Property Damage Product Liability

**Bankruptcy**
☐ 422 Appeal 28 USC 158
☐ 423 Withdrawal 28 USC 157

**Prisoner Petitions**
☐ 535 Death Penalty
☐ 540 Mandamus & Other
☐ 550 Civil Rights
☐ 555 Prison Condition

**Property Rights**
☐ 820 Copyrights
☐ 830 Patent
☐ 840 Trademark

**Federal Tax Suits**
☐ 870 Taxes (US plaintiff or defendant)
☐ 871 IRS-Third Party 26 USC 7609

**Forfeiture/Penalty**
☐ 610 Agriculture
☐ 620 Other Food &Drug
☐ 625 Drug Related Seizure of Property 21 USC 881
☐ 630 Liquor Laws
☐ 640 RR & Truck
☐ 650 Airline Regs
☐ 660 Occupational Safety/Health
☐ 690 Other

**Other Statutes**
☐ 400 State Reapportionment
☐ 430 Banks & Banking
☐ 450 Commerce/ICC Rates/etc.
☐ 460 Deportation

☐ 470 Racketeer Influenced & Corrupt Organizations
☐ 480 Consumer Credit
☐ 490 Cable/Satellite TV
☐ 810 Selective Service
☐ 850 Securities/Commodities/ Exchange
☐ 875 Customer Challenge 12 USC 3410
☐ 900 Appeal of fee determination under equal access to Justice
☐ 950 Constitutionality of State Statutes
☐ 890 Other Statutory Actions (if not administrative agency review or Privacy Act

| ○  **G.  Habeas Corpus/ 2255** | ○  **H.  Employment Discrimination** | ○  **I.  FOIA/PRIVACY ACT** | ○  **J.  Student Loan** |
|---|---|---|---|
| ☐ 530 Habeas Corpus-General<br>☐ 510 Motion/Vacate Sentence | ☐ 442 Civil Rights-Employment<br>(criteria: race, gender/sex,<br>national origin,<br>discrimination, disability<br>age, religion, retaliation)<br><br>*(If pro se, select this deck)* | ☐ 895 Freedom of Information Act<br>☐ 890 Other Statutory Actions<br>(if Privacy Act)<br><br><br>*(If pro se, select this deck)* | ☐ 152 Recovery of Defaulted<br>Student Loans<br>(excluding veterans) |

| ○  **K.  Labor/ERISA (non-employment)** | ○  **L.  Other Civil Rights (non-employment)** | ○  **M.  Contract** | ○  **N.  Three-Judge Court** |
|---|---|---|---|
| ☐ 710 Fair Labor Standards Act<br>☐ 720 Labor/Mgmt. Relations<br>☐ 730 Labor/Mgmt. Reporting &<br>Disclosure Act<br>☐ 740 Labor Railway Act<br>☐ 790 Other Labor Litigation<br>☐ 791 Empl. Ret. Inc. Security Act | ☐ 441 Voting (if not Voting Rights<br>Act)<br>☐ 443 Housing/Accommodations<br>☐ 444 Welfare<br>☐ 440 Other Civil Rights<br>☐ 445 American w/Disabilities-<br>Employment<br>☐ 446 Americans w/Disabilities-<br>Other | ☐ 110 Insurance<br>☐ 120 Marine<br>☐ 130 Miller Act<br>☐ 140 Negotiable Instrument<br>☐ 150 Recovery of Overpayment &<br>Enforcement of Judgment<br>☐ 153 Recovery of Overpayment of<br>Veteran's Benefits<br>☐ 160 Stockholder's Suits<br>☐ 190 Other Contracts<br>☐ 195 Contract Product Liability<br>☐ 196 Franchise | ☐ 441 Civil Rights-Voting<br>(if Voting Rights Act) |

**V. ORIGIN**

○ 1 Original Proceeding    ⊙ 2 Removed from State Court    ○ 3 Remanded from Appellate Court    ○ 4 Reinstated or Reopened    ○ 5 Transferred from another district (specify)    ○ 6 Multi district Litigation    ○ 7 Appeal to District Judge from Mag. Judge

**VI. CAUSE OF ACTION** (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.)

49 U.S.C. § 31305; 49 C.F.R. §§ 40, 382, 386 (Commercial Motor Vehicle Safety Act); 29 U.S.C. § 185 (Labor Management Relations Act)

| **VII. REQUESTED IN COMPLAINT** | ☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23 | DEMAND $ 5,000,000 | Check YES only if demanded in complaint |
|---|---|---|---|
| | | JURY DEMAND: | YES ☒   NO ☐ |

**VIII. RELATED CASE(S) IF ANY**    (See instruction)    YES ☒    NO ☐    If yes, please complete related case form.

DATE  December 31, 2007    SIGNATURE OF ATTORNEY OF RECORD

---

**INSTRUCTIONS FOR COMPLETING CIVIL COVER SHEET JS-44**
Authority for Civil Cover Sheet

The JS-44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. Listed below are tips for completing the civil cover sheet. These tips coincide with the Roman Numerals on the Cover Sheet.

I.      COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF/DEFENDANT (b) County of residence: Use 11001 to indicate plaintiff is resident of Washington, D.C.; 88888 if plaintiff is resident of the United States but not of Washington, D.C., and 99999 if plaintiff is outside the United States.

III.    CITIZENSHIP OF PRINCIPAL PARTIES: This section is completed only if diversity of citizenship was selected as the Basis of Jurisdiction under Section II.

IV.     CASE ASSIGNMENT AND NATURE OF SUIT: The assignment of a judge to your case will depend on the category you select that best represents the primary cause of action found in your complaint. You may select only one category. You must also select one corresponding nature of suit found under the category of case.

VI.     CAUSE OF ACTION: Cite the US Civil Statute under which you are filing and write a brief statement of the primary cause.

VIII.   RELATED CASES, IF ANY: If you indicated that there is a related case, you must complete a related case form, which may be obtained from the Clerk's Office.

Because of the need for accurate and complete information, you should ensure the accuracy of the information provided prior to signing the form.