IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

CLERK
US DISTRICT & BANKRUPTCY
COURTS

2008 JAN 14 PM 4: 23

RECEIVED

BENJAMIN RAMEY,

PLAINTIFF,

V.

No. 07-2340 (RJL)

POTOMAC ELECTRIC POWER COMPANY,

DEFENDANT.

## PLAINTIFF'S OPPOSITION MOTION TO DEFENDANTS MOTION TO DISMISS

### I INTRODUCTION

DEFENDANT UTILIZES TWO ALCOHOL POLICIES TO TEST EMPLOYEES (1) FOR ADMINISTRATIVE EMPLOYEES AND (2) FOR CMV (COMMERCIAL MOTOR VEHICAL) DRIVERS. PEPCO'S CMV ALCOHOL POLICY IS DOT. PEPCO CAN NOT HAVE IT BOTH WAYS AND COUNSEL, BERTRAM CONTINUE TO MISLEAD THE COURT AS SHE MISLEAD IN ALL OTHER TRIBUNALS, RECENTLY JUDGE RETCHEN. JUDGE RETCHEN AND THE ARBITRATORS ERRED WHEN DISMISSING THE CLAIM OF DOT VIOLATIONS. FOR YEARS COUNSEL HAS BEEN LYING, MISLEADING AND MANIPULATING THE COURT SYSTEM TO SHELTER PEPCO FROM VIOLATIONS AND WRONG DOING TO PREVAIL. COUNSEL HAVE BEEN BILLING PEPCO FOR OVER 4 YEARS, PREVAILING ONLY BY MOTIONS TO DISMISS. COUNSEL CAN NOT CALL UPON NOT ONE WITNESS TO TESTIFY ON HER BEHALF WITHOUT PERJURY.

COUNSEL CLAIM THAT PLAINTIFF'S CLAIM WAS FILED UNTIMELY, BUT CAN NOT PRESENT ANY PROOF BECAUSE THERE IS NOT ANY. THE LABOR RELATIONS OFFICE DO NOT EXCEPT FILING FROM AN INDIVISUAL, IF THAT COMPLAINT WAS ACTIVE IN COURT, SO THE COURT SHOULD HAVE JURISDICTION TO DETERMINE THE STATUE

## II. ARGUMENT

### A. PLAINTIFF SHOULD BE ABLE TO PURSUE A PRIVATE SUIT.

1. THERE IS NO STATUE OF LIMITATIONS RECORDED IN PEPCO'S POLICY, THE UNION'S AGREEMENT OR THE FMCSR (FEDERAL MOTOR CARRIERS SAFETY REGULATIONS) HANDBOOK THAT STATES A 60 DAY STATUE OF LIMITATIONS FOR FILING A CLAIM AGAINST A COMPANY FOR VIOLATING DOT ALCOHOL TESTING. COUNSEL IS MAKING LAW AS SHE GOES ALONG TO SATIFY THE COURT. PLAINTIFF FILED A COMPLAINT WITH DOT, EX. 1, BUT FOR SOME REASON DOT FAILED TO TAKE ANY ACTION AGAINST PEPCO, BUT REMINDED PEPCO OF THE ENFORCEMENT ACTION SHOULD IT CONTINUE. PEPCO ALCOHOL POLICY FOR CMV DRIVERS IS DOT AND NO COMPANY POLICY CAN SUPERCEDE A FEDERAL LAW. CONGRESS PASS THE LAW, DOT IS SUPPOSE TO ENFORCE THE LAW ON VIOLATORS, SO AGAIN THE COURT HAVE JURISDICTION TO RULE.

2. PEPCO IS ONLY REQUIRED TO USE NON-DOT TEST FOR NON-DOT EMPLOYEES. COUNSEL CLAIM THAT EIGHT HOURS HAD PASSED SINCE REASONABLE SUSPICION HAD ARISEN WHEN PEPCO CONDUCTED THE TEST AND FOR THAT REASON, PEPCO USE IT'S OWN POLICY. EX. 2, TESTIMONY FROM DEFENDANTS AS BEING CREDIBLE WITNESSES AT A FORMER HEARING. THE ALJ GOVAN QUOTED A TIME SPAN AROUND 4:00 AM. WHEN A REASONABLE SUSPICION HAD ARISEN TO TEST PLAINTIFF, SO THE TEST WAS CONDUCTED WITHIN EIGHT HOURS AND NOT AFTER, IF THE TEST WAS CONDUCTED AT 11:32 A.M. COUNSEL NEED TO STOP LYING TO THE COURT. IF ANY AMOUNT OF HOURS HAS PASSED, DOT DO NOT CHANGE. THE LAW IS WHAT IT IS. NOWHERE IN THE COUNTRY IS THERE A RULING OR LAW THAT AUTHORIZES A LARGE CORPORATION TO DETAIN AN EMPLOYEE FOR MORE THAN EIGHT HOURS FOR A ALCOHOL TEST AND FOR THAT REASON IS WHY DOT REQUIRE AN EMPLOYER TO CEASE TESTING AFTER EIGHT HOURS, EX. 3. SEC. 382.307 PG. 212 + 247 EX. 4 TESTIMONY UNDER OATH FROM THE DEFENDANT, DAVID DUARTE (SENIOR HUMAN RESOURCE MANAGER) THAT ORDERED THE TEST, TESTIFYING THAT PLAINTIFF WAS BOUND BY DOT.

3. FOR YEARS AND CONTINUING TODAY, COUNSEL STILL WILL NOT EXCEPT AND ADMIT THAT PLAINTIFF'S TEST WAS ALTERED, EVENTHOUGH A FORENSIC EXPERT THAT THE COURT DEPEND ON CONFIRMED THAT THE TEST WAS FORENSICALLY INVALID, EX. 5.

4. COUNSEL CONTINUE TO MISLEAD THE COURT BY LYING TO PREVAIL, AS IN ALL OTHER TRIBUNALS.

COUNSEL QUOTED SEC. 382.307 IN HER MOTION, AGAIN WITH ANOTHER ATTEMP TO MANIPULATE

THE COURT SYSTEM, BY OUTRIGHT LYING, KNOWING THAT SEC. 382.307 IN THE FMCSR DO NOT

CONFIRM THAT AN EMPLOYER CAN SUPERCEDE THE LAW. SEC. 382.307 EX. 3 THERE IS NO MENTION OF WHAT

COUNSEL IS IMPLYING.

5. PLAINTIFF HAS BEEN CHALLENGING THE TEST FOR YEARS AS PRO-SE. COUNSEL HAD KNOWLEDGE

OF PLAINTIFF'S ALLEGATIONS, BUT DECIDED TO PREVAIL, BY LYING TO THE COURT. THE ALLEGE ALCOHOL

TECHICIAN, MR. HYDE TESTIFIED THAT, "PEPCO WAITED TOO LONG, TO TEST PLAINTIFF, EX. 2 PG. 4 ONLY

BECAUSE OF DOT REQUIREMENTS, BUT DUARTE ORDERED THE TEST ANYWAY AND HAD THE TEST

ALTERED TO DISCREDIT PLAINTIFF'S TESTIMONY OF THE ACTUAL EVENTS WHICH OCCURED THAT

MORNING, MAINLY BECAUSE OF THE KIDNAPPING OF PLAINTIFF, WHICH IS ON APPEAL.

6. DEFENDANTS ALTERED BOTH OF PLAINTIFF'S TEST FORMS (BREATH AND URINE). THE ALCOHOL

TEST FORM, EX. 6 AND IT'S CONCLUSION, EX. 5 .    THE URINE TEST FORM, EX. 7  WHICH WAS

ALTERED BY BLACKING OUT "FEDERAL" AT THE TOP OF THE FORM. EX. 3, SEC. 390.35 STATES THE

CONSEQUENCES (CIVIL OR CRIMINAL PENALTIES) WHEN A FEDERAL DOCUMENT IS ALTERED.

## COUNSEL'S DEFENSE

1. JUDGE RETCHIN ERRED WHEN SHE DISMISSED ALL OF THE CLAIMS THAT COUNSEL FILED FOR

AN INJUNCTION ON PLAINTIFF, AFTER PLAINTIFF FILED A TRO ON DEFENDANTS. JUDGE RETCHIN EVEN

PUT A PERMANENT GAG ORDER ON PLAINTIFF AND BEFORE SHE DISMISSED THE CLAIMS, SHE ASK PLAINTIFF, IF

SHE RULED WITH PEPCO, WOULD HE COME AFTER HER."

## PLAINTIFF'S DEFENSE

1. RULINGS FROM THE FMCSR HANDBOOK.

2. THE TWO ALTERED TEST FORMS.

3. AN FORENSIC EXPERT ON ALCOHOL TESTING.

4. A DOT AGENT AND A CAP. HILL POLICE OFFICE THAT WILL TESTIFY

PLAINTIFF REQUEST THAT THE COURT GRANT PLAINTIFF'S OPPOSITION MOTION TO DEFENDANTS MOTION TO DISMISS. A ORDER TO GRANT PLAINTIFF'S OPPOSITION MOTION WAS FILED WITH THIS MOTION. ALSO THE COURT NEED TO INFORM COUNSEL TO MAIL PLAINTIFFS MOTION AT A REASONABLE TIME TO RESPONE. COUNSEL FILED ON THE 3 RD OF JAN. AND PLAINTIFF RECEIVED A COPY ON THE 10TH OF JAN., ONLY ALLOWING PLAINTIFF 4 DAYS TO FILE HIS RESPONSE. COUNSEL IS ONCE AGAIN TRYING AN UNPROFFESSAL TACTIC TO PREVAIL.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY THAT I CAUSED A TRUE AND CORRECT COPY OF THE FOREGOING MOTION TO BE SERVED BY FIRST CLASS MAIL, POSTAGE PRE-PAID, ON THE FOLLOWING AS OF THE 14TH DAY OF JAN. 2008.

CONNIE BERTRAM ESQ.

1700 K ST. N.W

WASH. D.C., 20006

RESPECTFULLY SUBMITTED,

Benjamin Ramey

BENJAMIN RAMEY

4251 CLAY ST. N.E.

WASH. D.C., 20019

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLUMBIA

BENJAMIN RAMEY

   PLAINTIFF,

    V.

POTOMAC ELECTRIC POWER

COMPANY,

   DEFENDANT.

No. 07-2340 (RJL)

ORDER

UPON CONSIDERATION OF PLAINTIFF, BENJAMIN RAMEY'S MOTION

TO DENY DEFENDANTS MOTION TO DISMISS, THE COURT ORDERS AS FOLLOWS:

   PLAINTIFFS OPPOSITION MOTION TO DEFENDANTS MOTION TO DISMISS

IS GRANTED, ORDERED THIS _____ DAY OF _____

_____

U.S. DISTRICT COURT JUDGE

Ex. 1



U. S. Department
of Transportation
Federal Motor Carrier
Safety Administration

District of Columbia Division
(202) 219-3553 FAX 219-3546

1990   K Street, NW., Suite 510
Washington, D.C.  2006

In Reply Refer To:
MC-EFE-DC

January 6, 2005

Benjamin F. Ramey
4251 Clay Street, NE
Washington, DC 20019

Dear Mr. Ramey

This letter is in response to your October 27, 2004, compliant filed with the Federal Motor
Carrier Safety Administration concerning the safety compliance of Potomac Electric Power
Company (Pepco) of Washington DC.  Specifically, you were concerned about PEPCO failure to
comply with Federal Motor Carrier Safety Regulations drug testing requirements.

The Federal Motor Carrier Safety Administration is very concerned about violations of the
Federal Motor Carrier Safety and Hazardous Materials Regulations by motor carriers and its
employees.

Therefore, an investigation into this matter has been conducted by this office and some violations
were discovered, but no enforcement action was taken. While the violations were minor the
motor carrier in questions has been informed of the importance of complying with all of the
aforementioned regulations.

 As a result of the investigation, this complaint has been administratively closed.  Your
comments; however, will be kept on file for future reference and/or enforcement action should
this company further commit safety violations as contained in the Federal Motor Carrier Safety
Regulations.

Sincerely yours,

Taft Kelly
Division Administrator

Ex. 2

# GOVERNMENT OF THE DISTRICT OF COLUMBIA
## Department of Employment Services
## Labor Standards Bureau

Office of Hearings and Adjudication
Administrative Hearings Division

★ ★ ★

(202) 671-2233-Voice
( 202) 673-6938-Fax

In the Matter of )
)
BENJAMIN RAMEY, )
)
    Claimant, )
)
       v. )    OHA No.  05-318
)    OWC No. 608087
POTOMAC ELECTRIC POWER COMPANY, )
)
    and )
)
CHC, )
)
    Employer/Carrier. )

Appearances:

    MARIA C. MENDOZA, ESQUIRE        KEVIN J. O'CONNELLL, ESQUIRE
    For the Claimant              For the Employer/Carrier

Before:

    AMELIA G. GOVAN
    ADMINISTRATIVE LAW JUDGE

## COMPENSATION ORDER

### STATEMENT OF THE CASE

This proceeding arises out of a claim for workers' compensation benefits filed pursuant to the provisions of the District of Columbia Workers' Compensation Act of 1979, as amended, D.C. Code 2001, §§32-1501 *et seq.* (hereinafter, the "Act").

After timely notice, a full evidentiary hearing was held on August 17, 2005 before Amelia G. Govan, Administrative Law Judge. Benjamin Ramey (hereinafter, claimant) appeared in person and by counsel. Potomac Electric Power Company[PEPCO]/CHC (hereinafter, employer) appeared by counsel. Claimant testified on his own behalf. Lamar L Dudley also testified on claimant's behalf. Gregory M. Johnson, Sr., Thomas Hyde, Negussie Birratu and David Duarte testified on behalf of employer. Claimant Exhibit (hereinafter, CX) Nos. 1 - 6 and Employer Exhibit (hereinafter, RX) Nos. 1 -

him to "wait a minute". Shortly thereafter, Mr. Negussie Birratu, who was at that time a senior labor relations specialist for employer, came into Mr. Duarte's office. Again, claimant asked to use the restroom and Mr. Duarte told him to sit there and wait. Claimant also asked to go smoke a cigarette with Mr. Duarte and Mr. Johnson; Mr. Duarte refused him permission, telling him again to sit down.

During the extended time (about two hours) that claimant was sitting and waiting in Mr. Duarte's office, Mr. Duarte was making telephone calls to try to arrange for a Breathalyzer test. At some point, claimant asked Mr. Duarte why he was treating him like a dog or an animal, and Mr. Duarte did not respond.

A few minutes later, when claimant attempted to speak again, Mr. Duarte forcefully told him to "shut up". Later, Lamar L. Dudley, a union representative, also entered Mr. Duarte's office. Mr. Dudley introduced himself to claimant and explained why he was there. Shortly thereafter, everyone in the office was instructed to leave by Mr. Duarte. Claimant, Mr. Dudley, Mr. Johnson, and Mr. Negussie got into an automobile and left. When they drove off, it was after 5:00 a.m., and it was not dark. Claimant rode in the back seat with Mr. Dudley; Mr. Johnson drove, and Mr. Negussie rode in the front passenger seat.

The vehicle headed south and drove for about an hour; claimant observed a sign for Dulles Airport. At some point, the driver was lost, and stopped to ask for directions.

The group arrived at a facility where Mr. Negussie and Mr Dudley spoke with a physician; the group was at this facility for about an hour. Claimant asked Mr. Negussie if he could use the restroom, and was refused. Mr.

Dudley asked both Mr. Negussie and Mr. Johnson to give claimant something to eat or drink, and was refused.

The group drove around for some time before reaching another facility, where they stopped. Mr. Dudley and Mr. Negussie went to the back to speak with the physician there; claimant asked Mr. Johnson again for something to eat, and was refused. The physician at the second facility came out into the waiting room and advised the group that they couldn't get the Breathalyzer test done there. At about 8:30 a.m., Mr. Dudley insisted that claimant be allowed to use the restroom. Claimant did so, thanked Mr. Dudley when he came out, and was given a drink of water.

The group left that facility and returned to employer's downtown building. The others in the group purchased donuts and coffee, but refused claimant anything to eat or drink. The group returned to Mr. Duarte's office, and Thomas Hyde, a Breathalyzer technician arrived about 11:00 a.m. Although Mr. Hyde stated that they had waited too long, at Mr. Duarte's direction claimant was tested. On August 30, 2003 at 11:32 a.m., two successive Breathalyzer tests were administered to claimant. Both tests had positive results; the first reading was 0.070, and the second reading was 0.065. (CX 6).

Claimant, Mr. Duarte and a security officer next went to claimant's automobile, which Mr. Duarte directed the officer to "shake down". Security inspected claimant's car trunk, inside the passenger compartment, and under the seat. Mr. Duarte told claimant he had been placed on five days crisis suspension, and left. Claimant got in his car, drove home, and went to bed.

Claimant was placed on suspension effective September 1, 2003. Mr Dudley sent a report

Ex. 3

# Federal Motor Carrier

# SAFETY

# Regulations

## Pocketbook

as prescribed by
U.S. DEPARTMENT OF TRANSPORTATION
FEDERAL MOTOR CARRIER SAFETY ADMINISTRATION
PARTS 40, 303, 380-397, 380-399, 1300

UPDATED MONTHLY

Contains
the New
Hours of Service
Regulations!

# §382.307 Reasonable suspicion testing.

(a) An employer shall require a driver to submit to an alcohol test when the employer has reasonable suspicion to believe that the driver has violated the prohibitions of subpart B of this part concerning alcohol. The employer's determination that reasonable suspicion exists to require the driver to undergo an alcohol test must be based on specific, contemporaneous, articulable observations concerning the appearance, behavior, speech or body odors of the driver.

(b) An employer shall require a driver to submit to a controlled substances test when the employer has reasonable suspicion to believe that the driver has violated the prohibitions of subpart B of this part concerning controlled substances. The employer's determination that reasonable suspicion exists to require the driver to undergo a controlled substances test must be based on specific, contemporaneous, articulable observations concerning the appearance, behavior, speech or body odors of the driver. The observations may include indications of the chronic and withdrawal effects of controlled substances.

(c) The required observations for alcohol and/or controlled substances reasonable suspicion testing shall be made by a supervisor or company official who is trained in accordance with §382.603. The person who makes the determination that reasonable suspicion exists to conduct an alcohol test shall not conduct the alcohol test of the driver.

(d) Alcohol testing is authorized by this section only if the observations required by paragraph (a) of this section are made during, just preceding, or just after the period of the work day that the driver is required to be in compliance with this part. A driver may be directed by the employer to only undergo reasonable suspicion testing while the driver is performing safety-sensitive functions, just before the driver is to perform safety-sensitive functions, or just after the driver has ceased performing such functions.

(e)(1) If an alcohol test required by this section is not administered within two hours following the determination under paragraph (a) of this section, the employer shall prepare and maintain on file a record stating the reasons the alcohol test was not promptly administered. If an alcohol test required by this section is not administered within eight hours following the determination under paragraph (a) of this section, the employer shall cease attempts to administer an alcohol test and

shall state in the record the reasons for not administering the test.

(2) Notwithstanding the absence of a reasonable suspicion alcohol test under this section, no driver shall report for duty or remain on duty requiring the performance of safety-sensitive functions while the driver is under the influence of or impaired by alcohol, as shown by the behavioral, speech, and performance indicators of alcohol misuse, nor shall an employer permit the driver to perform or continue to perform safety-sensitive functions, until:

(i) An alcohol test is administered and the driver's alcohol concentration measures less than 0.02; or

(ii) Twenty four hours have elapsed following the determination under paragraph (a) of this section that there is reasonable suspicion to believe that the driver has violated the prohibitions in this part concerning the use of alcohol.

(3) Except as provided in paragraph (e)(2) of this section, no employer shall take any action under this part against a driver based solely on the driver's behavior and appearance, with respect to alcohol use, in the absence of an alcohol test. This does not prohibit an employer with independent authority of this part from taking any action otherwise consistent with law.

(f) A written record shall be made of the observations leading to an alcohol or controlled substances reasonable suspicion test, and signed by the supervisor or company official who made the observations, within 24 hours of the observed behavior or before the results of the alcohol or controlled substances tests are released, whichever is earlier.

## §382.309 Return-to-duty testing.

The requirements for return-to-duty testing must be performed in accordance with 49 CFR part 40, Subpart O.

## §382.311 Follow-up testing.

The requirements for follow-up testing must be performed in accordance with 49 CFR part 40, Subpart O.

# Subpart D — Handling of Test Results, Record Retention and Confidentiality

## §382.401 Retention of records.

(a) **General requirement.** Each employer shall maintain

(5) Each roll of film shall include a microfilm of a certificate or certificates stating that the photographs are direct or facsimile reproductions of the original records. Such certificate(s) shall be executed by a person or persons having personal knowledge of the material covered thereby.

(c) All records and documents required to be maintained under this subchapter may be destroyed after they have been suitably photographed for preservation.

(d) **Exception.** All records except those requiring a signature may be maintained through the use of computer technology provided the motor carrier can produce, upon demand, a computer printout of the required data.

## §390.33 Commercial motor vehicles used for purposes other than defined.

Whenever a commercial motor vehicle of one type is used to perform the functions normally performed by a commercial motor vehicle of another type, the requirements of this subchapter and Part 325 of Subchapter A shall apply to the commercial motor vehicle and to its operation in the same manner as though the commercial motor vehicle were actually a commercial motor vehicle of the latter type.

**Example:** If a commercial motor vehicle other than a bus is used to perform the functions normally performed by a bus, the regulations pertaining to buses and to the transportation of passengers shall apply to that commercial motor vehicle.

## §390.35 Certificates, reports, and records: falsification, reproduction, or alteration.

No motor carrier, its agents, officers, representatives, or employees shall make or cause to make—

(a) A fraudulent or intentionally false statement on any application, certificate, report, or record required by Part 325 of subchapter A or this subchapter;

(b) A fraudulent or intentionally false entry on any application, certificate, report, or record required to be used, completed, or retained, to comply with any requirement of this subchapter or Part 325 of Subchapter A; or

(c) A reproduction, for fraudulent purposes, of any application, certificate, report, or record required by this subchapter or Part 325 of Subchapter A.

§390.37

## §390.37 Violation and penalty.

Any person who violates the rules set forth in this subchapter or Part 325 of Subchapter A may be subject to civil or criminal penalties.

## Subpart C — [Removed and reserved.]

## Subpart D — [Removed and reserved.]

EX. 4

jhl

JH

1

## GOVERNMENT OF THE DISTRICT OF COLUMBIA
## DEPARTMENT OF EMPLOYMENT SERVICES
## HEARINGS AND ADJUDICATION SECTION

- - - - - - - - - - - - - x

BENJAMIN F. RAMEY,                          :

      Claimant,                       :

      v.                              :   OHA No. 05-318

POTOMAC ELECTRIC POWER                      :   OWC/ODC No. 608087
COMPANY,

      Employer,                       :

    and                                 :

CHC,                                        :

      Carrier.                        :

- - - - - - - - - - - - - x

                   Wednesday, August 17, 2005

                   64 New York Avenue, N.E.
                   Washington, D.C. 20002

      The hearing in the above-entitled matter

was convened, pursuant to notice, at 2:26 p.m.

BEFORE:

        AMELIA G. GOVAN
        Administrative Law Judge

jhl

3

## C O N T E N T S

| WITNESS | DIRECT | CROSS | REDIRECT | RECROSS |
|---|---|---|---|---|
| Benjamin F. Ramey | 14 | 55 | 96 | -- |
| Lamar L. Dudley<br>Further Redirect | 99 | 114 | 120<br>123 | 122 |
| Gregory M.<br>Johnson, Sr. | 126 | 145 | 152 | -- |
| Thomas Hyde | 156 | 164 | 177 | -- |
| Negussie Birratu | 181 | 191 | 201 | 204 |
| David A. Duarte | 207 | 234 | 247 | 249 |

### EXHIBITS

| CLAIMANT'S | IDENTIFIED | RECEIVED |
|---|---|---|
| 1 - 5 | (Previously) | 9 |
| 6 | (Previously) | 179 |
| EMPLOYER'S | | |
| 1 through 8 | (Previously) | 11 |
| 9 | (Previously) | -- |
| 10 | (Previously) | 240 |

1   on his feet.  He was slurring his words.  And, yes,

2   his eyes were very, very bloodshot.

3        And so after observing this and just his--

4   his mannerisms, how he held his hands, how he--how

5   his body moved and what have you, I--and of course

6   the--the smelling of the alcohol, I determined that

7   he needed to be tested.  Because at that time we

8   were in a--in a storm condition, he was a truck

9   driver in conduit which meant that he would be

10  going out into the community.  He had to be at the

11  top of his senses because of the danger.  It's a

12  danger in and by itself if you're--you're in--

13  you're well tested and didn't have any alcohol in

14  your system.  So and we have had some fatalities at

15  PEPCO so we were very, very astute to the fact that

16  we wanted to keep a close watch on this.

17       Q    What was the purpose of ordering testing

18  for Mr. Ramey?

19       A    When--when Mr. Ramey is a commercial motor

20  vehicle driver, we are bound by the Department of

21  Transportation that if an individual reports to

22  work under the influence of alcohol or he's

1    JUDGE GOVAN:  Mr. O'Connell?

2            REDIRECT EXAMINATION

3        BY MR. O'CONNELL:

4    Q    One question.  The PEPCO employee policy

5 with regard to drug and alcohol rules requires the

6 search of the vehicle after a triggering event,

7 correct?

8    A    Yes, sir, and it goes--that that policy

9 goes further.  If an individual drives his personal

10 vehicle on PEPCO property, that vehicle can be

11 inspected at any time.

12    Q    But the rules require it after a

13 triggering event?

14    A    Yes, it requires it as to DOT.

15        MR. O'CONNELL:  Those are all the

16 questions I have, Your Honor.

17        JUDGE GOVAN:  Ms. Mendoza?

18        MS. MENDOZA:  No further questions,

19 Your Honor.

20        JUDGE GOVAN:  Mr. Duarte, I'm looking at

21 Exhibit No. 4 for the Employer which is the letter

22 from Mr. Wade to the nurse, Ms. Saucier.  I noticed

Ex. 5



# Bryan W. Brown

Attorney at Law

400 Fifth Street, NW
Suite 300
Washington, DC 20001
(202) 639-0221
attorney@bryanwbrown.com

To:    William Bach
From:  Bryan W. Brown
Re:    Benjamin Ramey
Date:  July 19, 2007

    I am currently an attorney barred to practice law in the District of Columbia and the Commonwealth of Virginia. I am a member of the D.C. Superior Court Traffic Panel and a Duty Attorney in D.C. Superior Court. I have been practicing in the area of criminal defense with a primary focus on defense of alcohol related driving offenses for over 5 years. I attend annual trainings regarding breath testing and the potential errors associated with breath testing. With the knowledge I have gained in my legal practice and educational seminars I have evaluated the documents presented. Those documents included an "Alcohol Testing Form" with a printout from a Breathalyzer 7419 xeroxed onto it, a Memo from Pepco dated September 30, 2003, a Employee Grievance Form, a Certificate of Training, a two page Delcaration of Laman Dudley, and a statement by Benjamin Ramey. After reviewing the materials, it is apparent that the breath test conducted on Mr. Ramey is not forensically valid. The test was not conducted sufficiently close in time to the incident for the results to be valid. The U.S. Capital Police Breath Testing Training manual requires two tests to be conducted no more then 10 minutes apart so that accuracy can be demonstrated. That was not done with Mr. Ramey's test. Capital Police standards also require the testing to be done within two hours, which was also not done in Mr. Ramey's case.

    A test so far after an individual could have possible had a drink is highly unreliable. There are many factors to consider some of which include whether the individual was in the absorption, distribution, or elimination phase. That is to say was any alcohol consumed being absorbed into his blood, distributed throughout his blood, or eliminated from his blood. Generally, once an elimination phase is reached, the body eliminates alcohol at a rate of approximately .015% per hour. This number, however, can vary dramatically depending on the individual. Furthermore, the time a person remains in the three phases also varies dramatically. These factors make using a test so remote in time highly unreliable.

    A number of other factors also make breath machine readings unreliable. The inherent margin of error for most machines is around 10%. This error is added to a potentially 15% margin of error that can result from an improper breath pattern near the time of testing. Also added to the total margin of error can be an 8.6% margin of error per 1 degree Celcius difference between actual core body temperature and the assumed core body temperature. Also, Hematocrit level can result in an additonal 14% margin of error. When combined, the total margin of error

of a breath machine can approach 47.6%. This margin of error assumes a test taken shortly after the period when you want to know the Blood Alcohol Content. Additional causes of error can result from partition ratio error, mouth alcohol error, and extrapolation error. Because of the many potential causes of error in breath testing, a direct test of the blood is the most appropriate method for determining actual blood-alcohol levels.

In conclusion, the results of the test used on Mr. Ramey on August 30, 2003 are not forensically valid, and should be of no evidentiary value in determining Mr. Ramey's Blood Alcohol Content while he was on the job some 12 hours prior to the test. The test was taken far too remotely from the time Mr. Ramey was on the job, the two test that were taken were not taken within 10 minutes of each other, and the results of breath test without controls to eliminate potential causes of error make the results unreliable. As such, the results of the breath test should not have been used in the decision of whether or not to take action against Mr. Ramey for alleged violation of PEPCO policy.

EX.6

# Alcohol Testing Form

(The instructions for completing this form are on the back of Copy 3)

**STEP 1: TO BE COMPLETED BY ALCOHOL TECHNICIAN**

A. Employee Name __BENJAMIN F. RAMEY__
(PRINT) (First, M.I., Last)

B. SSN or Employee ID No. __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__

C. Employer Name __PEPCO__
Street __701 9th St NW__
City, ST ZIP, __WASHINGTON DC 20001__

DER Name and
Telephone No. __NEGUSSIE BIRRATH__     __(202) 872-36__
DER Name                                DER Phone Number

D. Reason For Test: ☐ Random  ☑ Reasonable Susp  ☐ Post-Accident  ☐ Return to Duty  ☐ Follow-up  ☐ Pre-employment

---

**STEP 2: TO BE COMPLETED BY EMPLOYEE**

I certify that I am about to submit to alcohol testing and that the identifying information provided on the form is true and correct.

Signature of Employee _____     Date  8  Month 13  Day 01  Ye 0

---

**STEP 3: TO BE COMPLETED BY ALCOHOL TECHNICIAN**

...he technician conducting the screening test is not the same technician who will be conducting the confirmation test, each technician must complete their own form.) I certify that I have conducted alcohol testing on the above named individual, that I am qualified to operate the testing device(s) identified, and that the results are as recorded.

TECHNICIAN: ☑ BAT  ☐ STT   DEVICE: ☐ SALIVA  ☑ BREATH*  ☐ 15-Minute Wait: ☐ Yes  ☐ No
SCREENING TEST: (For BREATH DEVICE* write in the space below _only_ if the testing device is _not_ designed to print.

| Test # | Testing Device Name | Device Serial # _OR_ Lot # & Exp Date | Activation Time | Reading Time | Result |
|---|---|---|---|---|---|

CONFIRMATION TEST:   Results _MUST_ be affixed to each copy of this form or printed directly onto the form.
Remarks: _____

Alcohol Technician's Company _____     Company Street Address __13615 BENT TREE CIRCLE__
(PRINT) Alcohol Technician's Name (First, M.I., Last) __THOMAS HYDE__     Company City, State, Zip __CENTREVILLE VA 20121__   Phone Number __703 802 22__

Signature of Alcohol Technician _____     Date  8  Month 13  Day 010  Ye

---

**STEP 4: TO BE COMPLETED BY EMPLOYEE IF TEST RESULT IS 0.02 OR HIGHER**

...tify that I have submitted to the alcohol test, the results of which are accurately recorded on this form. I understand ...t I must not drive, perform safety-sensitive duties, or operate heavy equipment because the results are 0.02 or greater.

Signature of Employee _____     Date  8  Month 13  Day 010  Ye

---

CUT HERE

BREATHALYZER 7410
SERIAL # : ARHK-103

BREATHALYZER PRINTER
SERIAL # : ARHL-049
PRINTER LOG #: 00506

MM.DD.YY HH:MM
08.30.03 11:09

*****************
* TEST NUMBER: 01252
*
* AIR-BLANK TEST:
*    0.000 PERCENT B
*
* BREATH TEST:
*    0.079 PERCENT B
*****************
DATA ACCEPTED :

BREATHALYZER 7410
SERIAL # : ARHK-1031

BREATHALYZER PRINTER
SERIAL # : ARHL-0498
PRINTER LOG #: 00502

MM.DD.YY HH:MM
08.30.03 11:32

*****************
* TEST NUMBER: 01253
*
* AIR-BLANK TEST:
*    0.000 PERCENT BAC
*
* BREATH TEST:
*    0.065 PERCENT BAC
*****************

DRY-GAS ACCURACY TEST

BREATHALYZER 7410
SERIAL # : ARHK-1031
TEST #   : 01254

BREATHALYZER PRINTER
SERIAL # : ARHL-0498
PRINTER LOG #: 00503

MM.DD.YY HH:MM
08.30.03 11:59

*****************
* LABELED BAC VALUE:
*    0.040 PERCENT BAC
*
* CORRECTED BAC VALUE:
*  0.040   PERCENT BAC
*
* ACCURACY TEST RESULT:
*    0.039 PERCENT BAC
*****************
TECHNICIAN SIGNATURE:



FEDERAL DRUG TESTING CUSTODY AND CONTROL FORM

| 10788 Roselle St, San Diego, CA 92121 |
| 4904 Alexander Dr., Research Triangle Park, NC 27709 |
| 69 First Ave., Raritan, NJ 08869 |
| 1120 Stateline Rd. West, Southaven, MS 38671 |
| 7202 North Gessner, Houston, TX 77040 |

SPECIMEN ID NO. 0138178017

LAB ACCESSION NO.

**STEP 1: COMPLETED BY COLLECTOR OR EMPLOYER REPRESENTATIVE**

A. Employer Name, Address and I.D. No. Acct # 3787740

PEPCO
701 9TH ST NW
WASHINGTON DC 20001
(202) 872 3641

B. MRO Name, Address, Phone and Fax No.
JAMES BRADSHAW
1324 WISSAHICON DR
NORTH WALES PA 19454
800 732 3784    FAX 215 641 4959

C. Donor SSN or Employee I.D. No. 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

D. Reason for Test:   ☐ Pre-employment   ☐ Random   ☒ Reasonable Suspicion/Cause   ☐ Post Accident
☐ Return to Duty   ☐ Follow-up   ☐ Other (specify) _____

E. Drug Tests to be Performed:   ☒ THC, COC, PCP, OPI, AMP   ☐ THC & COC Only   ☐ Other (specify) _____

F. Collection Site Address:
MID ATLANTIC DRUG TESTING
701 9TH ST NW
WASHINGTON, DC 20001

Collector Phone No. 703 852-2276
Collector Fax No. 703 852 2276

**STEP 2: COMPLETED BY COLLECTOR**

Read specimen temperature within 4 minutes. Is temperature between 90° and 100°F?   ☒ Yes   ☐ No, Enter Remark

Specimen Collection:   ☒ Split   ☐ Single   ☐ None Provided (Enter Remark)   ☐ Observed (Enter Remark)

REMARKS: FED CCF USED BECAUSE IT WAS ONLY FORM AVAILABLE

**STEP 3:** Collector affixes bottle seal(s) to bottle(s). Collector dates seal(s). Donor initials seal(s). Donor completes STEP 5 on Copy 2 (MRO Copy)

**STEP 4: CHAIN OF CUSTODY - INITIATED BY COLLECTOR AND COMPLETED BY LABORATORY**

I certify that the specimen given to me by the donor identified in the certification section on Copy 2 of this form was collected, labeled, sealed, and released to the Delivery Service noted in accordance with applicable Federal requirements.

Signature of Collector    12:01 AM/PM    Time of Collection    8/30/03    Date (Mo/Day/Yr.)

(PRINT) Collector's Name (First, MI, Last)

SPECIMEN BOTTLE(S) RELEASED TO: COURIER

Name of Delivery Service Transferring Specimen to Lab

**RECEIVED AT LAB:**

X _____
Signature of Accessioner
(PRINT) Accessioner's Name (First, MI, Last)    _____ / _____ / _____ Date (Mo/Day/Yr.)

Primary Specimen Bottle Seal Intact
☐ Yes
☐ No, Enter Remark Below

SPECIMEN BOTTLE(S) RELEASED TO:

**STEP 5: COMPLETED BY DONOR**

I certify that I provided my urine specimen to the collector; that I have not adulterated it in any manner; each specimen bottle used was sealed with a tamper-evident seal in my presence; and that the information provided on this form and on the label affixed to each specimen bottle is correct.

x Benjamin F. Ramey    Signature of Donor    BENJAMIN F. RAMEY    (PRINT) Donor's Name (First, MI, Last)    8/30/03    Date (Mo/Day/Yr.)

Daytime Phone No. (202) 213-8154    Evening Phone No. (202) 213-8154    Date of Birth 5 / 6 / 50    Mo. Day Yr.

Should the results of the laboratory tests for the specimen identified by this form be confirmed positive, the Medical Review Officer will contact you to ask about prescriptions and over-the-counter medications you may have taken. Therefore, you may want to make a list of those medications for your own records. THIS LIST IS NOT NECESSARY. If you choose to make a list, do so either on a separate piece of paper or on the back of your copy (COPY 5). --DO NOT PROVIDE THIS INFORMATION ON THE BACK OF ANY OTHER COPY OF THE FORM. TAKE COPY 5 WITH YOU.

**STEP 6: COMPLETED BY MEDICAL REVIEW OFFICER - PRIMARY SPECIMEN**

In accordance with applicable Federal requirements, my determination/verification is:

☐ NEGATIVE   ☐ POSITIVE   ☐ TEST CANCELLED   ☐ REFUSAL TO TEST BECAUSE:
☐ DILUTE                                          ☒ ADULTERATED   ☐ SUBSTITUTED

REMARKS _____

X _____
Signature of Medical Review Officer    (PRINT) Medical Review Officer's Name (First, MI, Last)    _____ / _____ / _____ Date (Mo/Day/Yr.)

**STEP 7: COMPLETED BY MEDICAL REVIEW OFFICER - SPLIT SPECIMEN**

In accordance with applicable Federal requirements, my determination/verification for the split specimen (if tested) is:

☐ RECONFIRMED   ☐ FAILED TO RECONFIRM - REASON _____

X _____
Signature of Medical Review Officer    (PRINT) Medical Review Officer's Name (First, MI, Last)    _____ / _____ / _____ Date (Mo/Day/Yr.)

PEPCO    2023882151    06:09    09/02/2003

PAGE 02